799 So.2d 919 (2001)
Hilda Darlene THOMPSON, Appellant
v.
Cordis Melvin THOMPSON, Jr., Appellee.
No. 2000-CA-00087-COA.
Court of Appeals of Mississippi.
November 6, 2001.
*921 Linda Pilcher Robinson, Attorney for Appellant.
W. Terrell Stubbs, Mendenhall, Attorney for Appellee.
Before SOUTHWICK, P.J., THOMAS, and IRVING, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. A little less than two years after a final judgment of divorce awarded custody of two daughters to their mother, the father filed for a modification. An order temporarily changing custody was entered, but four years passed before a final hearing was held. At the final hearing, the chancellor held that the mother had to prove a material change in circumstances since the date of the temporary order. She failed to do so, and the father received custody.
¶ 2. As to the older daughter, who indicated a preference to live with the father, no error is alleged. As to the younger daughter, we find that it was essentially admitted that a material change in circumstances had arisen at the time of the temporary change. Despite some procedural questions about who carried the burden of proof at the later final hearing, we hold that placing permanent custody with the father was not an abuse of discretion. We affirm.

STATEMENT OF FACTS
¶ 3. Hilda Darlene Thompson and Cordis Melvin Thompson were divorced in February 1993. Mrs. Thompson was awarded custody of the parties' two minor children, Brandi and Jennifer.
¶ 4. Mr. Thompson filed a petition for modification in November 1994. The older daughter, Brandi, indicated a preference to live with her father. That change in custody is not contested on appeal. As to the younger daughter, Jennifer, the court sought to be aided in its determination by appointing an expert to assess the entire Thompson family. The court's expert stated that Mrs. Thompson suffered from severe depression in addition to post-traumatic stress syndrome. He recommended that custody of both daughters be changed to the father.
¶ 5. Mrs. Thompson filed for a continuance to allow her additional time to obtain her own expert. A continuance was granted in May 1995, but a temporary order was also entered that gave custody of Jennifer to Mr. Thompson.
¶ 6. For reasons that are not apparent from the record, a period of three years passed without any recorded action. In July 1998, Mrs. Thompson petitioned the court to set the matter for trial. After a continuance that allowed Mr. Thompson to depose his former wife's expert, a hearing was held over two days in August 1999. Substantial evidence was received from the mother's expert regarding her present mental condition. The expert also asserted that at the time of the 1995 temporary change in custody, Mrs. Thompson had not been emotionally capable of having custody of her child. The expert asserted, however, that she was now sufficiently recovered *922 from her severe depression and post-traumatic stress syndrome to regain custody.
¶ 7. The court found that there had been no material change in circumstances since the entry of the 1995 temporary order. On the record the chancellor reviewed factors that the Supreme Court has enumerated for assessing custody issues. An order was entered allowing Mr. Thompson to retain custody of Jennifer.

DISCUSSION

I. Requirements for Modification of Custody
¶ 8. To modify a previous child custody order, there are three prerequisites; (1) the initial burden is on the party seeking the change to demonstrate that there has been a material change in the circumstances affecting the child; (2) the change that has occurred must be detrimental to the children's welfare; and (3) the chancellor must find that the change in custody is in the best interest of the children. Bredemeier v. Jackson, 689 So.2d 770, 775 (Miss.1997). In deciding whether there has been a material change, the totality of the circumstances should be considered. Id. If under this totality a material change has occurred, the court must make a separate assessment on whether this change is one that adversely affects the children. Id.
¶ 9. A chancellor's decisions in these matters will not be disturbed on appeal unless the finding is manifestly wrong or is not supported by substantial credible evidence. Polk v. Polk, 589 So.2d 123, 129 (Miss.1991).
¶ 10. This Court has recently been sharply divided in a modification appeal. The Court in opinions written by three different judges unanimously agreed that precedents such as these continued to set out the applicable test. Sturgis v. Sturgis, 792 So.2d 1020 (¶¶ 13, 26, & 35) (Miss.Ct. App.2001). The point of division was in explaining the role of the dominant Mississippi precedent on determining at least initial custody, and that is Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In Sturgis, the chancellor found a material change in circumstances adverse to the interests of the child but then did not mention all the Albright factors before deciding to alter custody. Sturgis, 792 So.2d 1020 at (¶ 18). A majority of the Court found that to be reversible error. Id. at (¶¶ 21 & 27-28).
¶ 11. In the case before us now, the chancellor after the final hearing never found a change in circumstances but went directly to the Albright factors to determine that the father should receive custody. What was procedurally unusual was that the chancellor considered the 1995 temporary custody order to have the effect of a permanent order. The party who then challenged that permanent-temporary order had to show a material change in circumstances. Mrs. Thompson, who was seeking the reinstatement of the original custody, put on substantial medical testimony that she had been medically unable to have custody in 1995. The purpose of that evidence was to set the foundation for her doctor's testimony that she had by 1999 adequately recovered and was unlikely to relapse into depression.
¶ 12. Once the chancellor here found no material change in circumstances since the date of the temporary decree, he nonetheless re-evaluated the Albright elements. When a petition seeking a modification alleges that a change in circumstances has occurred, it is quite likely if not inevitable that the change will be in one or more of the Albright factors. A hearing for modification of custody is not an invitation just to reconsider the initial balancing of the relevant circumstances. For example, if the *923 chancellor's initial custody decision was a relatively close one with each parent having similar strengths under the Albright analysis, a decision later to grant a change in custody is not supposed to be based just on a new weighing of those same factors that might now show a slight preference for the other parent. The Supreme Court has said that "only parental behavior that poses a clear danger to the child's mental or emotional health can justify a custody change." Morrow v. Morrow, 591 So.2d 829, 833 (Miss.1991).
¶ 13. Even with a finding of a material change in circumstances, there is another step:
Even though the chancellor finds a material adverse change in circumstances, a change in custody is not automatic. That finding is merely the first step, the one which then authorizes and indeed challenges the chancellor to then go forward and determine whether the best interests of the child justify a change of custody.
Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984). Whether all the Albright factors must be reweighed on the record in a modification decision was considered in Sturgis, but there was no majority of the court on that issue. Sturgis, 792 So.2d 1020 at (¶ 21). In the present case, the chancellor described each factor on the record and thus the necessity that he do so is moot.
¶ 14. We find this to be the applicable law. We now apply it to the chancellor's actions.

II. Validity of This Custody Modification
¶ 15. To determine whether the chancellor applied the proper legal standards and had adequate evidence to support the decision to change custody, we examine the custody proceedings in chronological order.
A) The initial custody agreement was incorporated into the divorce decree of February 25, 1993. Mrs. Thompson was given sole custody of the parties' two minor children.
B) Custody of both children remained with the mother until the father requested modification on November 28, 1994. The older daughter, Brandi, exercised her statutory right as a minor over the age of twelve to indicate her preference. Her election was to live with her father. The chancellor made the change and neither party contests Brandi's custody.
C) A hearing on Mr. Thompson's motion to modify the custody of the younger daughter Jennifer was held on February 27, 1995. The court appointed an expert to assess the entire family. The expert recommended that custody of the younger daughter also be given to the father. A continuance was granted so that the mother could obtain her own expert to contest the opinion of the court's expert. However, the court entered a temporary order giving custody to the father. That May 18, 1995 order is critical on this appeal. These are its only relevant parts:
Defendant/Petitioner [Mr. Thompson] is hereby granted temporary custody of the parties' minor child, Jennifer Dawn Thompson, effective May 15, 1995, at 9:00 a.m., with the Defendant/Petitioner to pick up said child after normal school hours on said date or if said chid [child] fails to attend school, he shall be allowed to pick up said child at Plaintiff/Respondent's home on said date.
Pending the final hearing in this cause, or until further order of this Court, Defendant/Petitioner shall not be required to pay any child support.
*924 ¶ 16. Two critical matters are obvious. First, the change in custody was temporary. Secondly, the order was not based on an explicit finding of material change in circumstances.
¶ 17. The basis and effect of a temporary custody order is explained by one treatise-writer:
The power of the Chancellor to issue temporary decrees covering child custody may be exercised either in term time or in vacation. At the hearing on the motion, the movant must be able to testify to the court's satisfaction that the need for a temporary order arises out of conditions present at the time. Mississippi is clearly a state that concerns itself with the best interest of the child and custody is one of the primary methods by which the state expresses her interest in those children.... Upon the filing of a motion asking for temporary custody the court will hear whatever evidence is necessary, in the sound discretion of the court, and may look into the circumstances of the parties pertaining to the care and custody and surroundings that will effect the child pending litigation and after, hearing both parties, will award temporary custody to the party that will best serve the interest of the child.
N. SHELTON HAND JR., MISSISSIPPI DIVORCE, ALIMONY AND CHILD CUSTODY § 22-1, 526 (1998). Though these statements are primarily describing the proceedings for a post-separation and pre-divorce custody decision, the point is equally applicable for a post-divorce hearing in which the allegation is made that an immediate but nonpermanent decision to change custody is needed.
¶ 18. In 1995 the chancellor granted temporary custody to Mr. Thompson. The order does not express the reason for this temporary change of custody that lasted for four years. A reasonable inference is that the temporary change of custody was ordered as a result of the court appointed expert's report recommending that custody be given to the father. We learn more about the medical problems leading to the 1995 change from the testimony put on by Mrs. Thompson at the 1999 hearing. It was all but admitted by the expert that the chancellor had little choice but to make a change in 1995, though the legal effect of that change at the later 1999 hearing is contested.
¶ 19. Although we find no precedent in which a permanent custody order has been interrupted by a temporary custody order, such action is consistent with the broad authority of the chancery court to protect the best interests of children within its jurisdiction. The length that the temporary change remained in effect is troubling. "Generally, the temporary order for custody will be effective only until the next term of court, but in a practical sense the temporary order will be allowed to stand until the case is determined on the merits if there is no undue delay." HAND, MISSISSIPPI DIVORCE at 527. Yet we find no error on the part of the chancellor that caused the delay.
¶ 20. The final step chronologically was the hearing in August 1999, on the merits of modification of the custody. The chancellor announced that it was Mrs. Thompson's obligation to prove a material change in custody adverse to the interests of the child. This ruling was despite that she had custody under the only permanent order in the case, though interrupted by the four-year old temporary order. Mrs. Thompson in July 1998 filed a motion that among other matters asserted that Mr. Thompson remained responsible to show a material change in circumstances from the 1993 custody order. The chancellor disagreed, but his pretrial rulings on the burdens *925 of proof were not reduced to an order. Instead, they are referenced in other filings. We describe his approach.
¶ 21. The record reveals that on March 2, 1999, a status conference was held. Both in a pleading that was filed and in an oral statement at the final hearing, Mrs. Thompson's attorney indicated that the chancellor ruled that the long passage of time since the 1995 temporary decree caused that decree to assume the role of a permanent change in custody. Also, since the younger child indicated a preference to be in the custody of her mother, that constituted in itself a substantial change in circumstances from the custody established by the 1995 temporary order. It would then be the obligation of the father to show that despite this change in circumstances, that it was not in the child's best interest to be placed in the mother's custody.
¶ 22. To place the chancellor's procedural rulings within the framework of what is required at custody modification hearings, we again summarize the required three steps. (1) The burden is on the party seeking the change to demonstrate that there has been a material change in the circumstances affecting the child. (2) The change that has occurred must be detrimental to the child's welfare. (3) A change in custody must be in the child's best interest. Bredemeier, 689 So.2d at 775. Even prior to these three steps analytically, the chancellor had converted the 1995 temporary order into a permanent one. That made the mother the moving party seeking a modification.
¶ 23. The chancellor held that the first two steps had been satisfied by the statement of the preference of a child over the age of twelve. A child over the age of twelve has the right to have her custody preference be given weight.
[I]f the court shall find that both parties are fit and proper persons to have custody of the children, and that either party is able to adequately provide for the care and maintenance of the children, and that it would be in the best interest and welfare of the children, then any such child who shall have reached his twelfth birthday shall have the privilege of choosing the parent with whom he shall live.
Miss.Code Ann. § 93-11-65 (Supp.2000).
¶ 24. The Supreme Court has said that this statute permits a child of the right age to choose the custodial parent if "the choice was in [the child's] best interest and the other requirements of the statute were met"; if "the chancellor denies a child his choice of custodial parent under § 93-11-65, then the chancellor must make on-the-record findings as to why the best interest of the child is not served." Polk v. Polk, 589 So.2d 123, 130 (Miss.1991). This ruling suggests that the first two factors of a change in custody can be satisfied by the child's own preference, and the chancellor must then explain on the record if the choice is not honored. It also was the ruling of this chancellor, that it would be the obligation of the father to indicate why a change in conformity with this statement of preference was not in the child's best interest.
¶ 25. Regardless of the procedural steps that took the court to the decisive issue, we agree the issue was properly identified. Had a substantial change in circumstances occurred since the original permanent decree in 1993, even if the change had occurred several years before the final hearing, and if so, what was in the best interest of the child? What finally the chancellor faced was the essential question of whether the considerable improvement in the mother's condition, a condition that her own witness said had in *926 1995 made her unable to have custody, should cause her to regain custody. It does not ultimately matter whether the chancellor considered that as a 1999 change in custody from a 1993 permanent custody decree that had been suspended by a 1995 temporary decree, or instead as a 1999 reconfirmation of custody from a 1995 decree that had already permanently changed the 1993 custody. The significant problems arising from depression that the mother admittedly had been suffering permitted a permanent change in custody. That change, according to the expert's testimony, would have been justified in 1995, even though the order stated that the change had then been temporary. The long passage of time with custody in the father created its own need to consider the temporary order as more than that.
¶ 26. We hold that the chancellor was within the broad powers granted him to consider the testimony both in 1995 and in 1999 as revealing a material change in circumstances from the original 1993 custody decree, and those circumstances were adverse to the best interest of the child. We could look at the permanent change as not occurring until 1999, but that is of no moment. The concerns for the mother as a custodial parent existed. As the Supreme Court has held, it is not enough to require a change in custody that a parent show that she has recovered or been rehabilitated from whatever problems previously made custody improper. Improvement in the condition of the non-custodial parent does not justify making a change. Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss.1996). Though the mother may in 1999 still technically have been the custodial parent, for purposes of precedents such as Touchstone, the fact that she had not been the de facto custodial parent for four years is important.
¶ 27. We affirm the chancellor's implicit finding that a substantial change of circumstances had occurred since 1993, and had manifested itself by 1995. We further affirm that the child's statement of a preference in 1999 should be given substantial weight, but that the chancellor placed on the record the reasons why he did not find that it was in the child's best interest to honor that preference.
¶ 28. The chancellor also indicated that having found no material change in circumstances since the date of the temporary order, there was no need to weigh the Albright factors. Out of an abundance of caution, concerned about what an appellate court might require, he reviewed those factors all the same. The result was to find that the factors favored custody with the father.
¶ 29. We should not be interpreted as holding that a temporary custody order normally should be given the status for modification purposes of a permanent order. At least when the temporary order predates the divorce, a showing of a material change in circumstances is not later required for entering an entirely different order when the divorce is granted. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995). The very reason for the order to be made temporary, no matter whether entered before or after the divorce, is that some exigency exists that requires immediate action. It may not be possible to have available for review all the relevant evidence by that time. Once a final and more deliberate hearing on custody is conducted, the party who initially obtained the temporary order has the burden to prove the need for a permanent change.
¶ 30. Yet here, the parties and the chancellor together allowed the hearing on permanent custody to be delayed for four years. By then, this no longer was a *927 temporary emergency order but had acquired incidents of permanency. We do not know, but find it to be a reasonable, that the mother and her physician may not have believed that an earlier attempt to regain permanent custody would have been effective because of continuing health problems. Regardless of the reason, the chancellor would not have been performing his equity tasks to ignore the passage of time.
¶ 31. We hold that the chancellor did not abuse his discretion in finding that in 1999 a substantial change had arisen in Mrs. Thompson's circumstances since 1993, that was adverse to the interest of the younger daughter Jennifer. That change was sufficiently shown as having persisted to 1999, even though the expert testimony was that Mrs. Thompson was much improved from the nadir in her condition. Having found a substantial change adverse to the child, the court was also well within its discretion to hold, after a review of all the Albright considerations, that it was in Jennifer's best interest to remain with her father.
¶ 32. THE JUDGMENT OF THE SIMPSON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY.