MODIFIED OPINION ON REHEARING
CARLTON, J.,
for the Court:
¶ 1. On our own motion, we granted rehearing in this case. The original opinion is withdrawn, and this opinion is substituted therefor.
FACTS
¶ 2. Mary Elizabeth Brown Robinson (Liz) and Paul Arthur Brown (Paul) divorced in 2002 on the ground of irreconcilable differences. The parties agreed that Liz would maintain primary physical custo *41 dy of the couple’s two daughters, Ruth and Mary, who at the time of the divorce were approximately twelve and eight years old, respectively. By their agreement, the parties shared legal custody of the children.
¶ 3. On June 5, 2009, Liz married Lance Robinson, with whom she had maintained a long-distance relationship prior to their marriage. Robinson lived in Ocean Springs, Mississippi. Although Robinson could have relocated to the Lee County area without jeopardizing his employment, he and Liz decided she would relocate to Ocean Springs so Robinson could remain close to his five-year-old son.
¶ 4. On June 19, 2009, Paul filed a motion for modification of custody, alleging that Liz’s move to Ocean Springs and other factors constituted a material change in circumstances which warranted a change in physical custody of the children from their mother to him. Liz answered and counter-sued, claiming that Paul came into court with “unclean hands,” as he was in contempt of court for his failure to pay child support and attorney’s fees from an earlier child-support dispute.
¶ 5. The Lee County Chancery Court held a trial on the matter on August 4 and August 5, 2009. The chancery court awarded Liz a judgment against Paul for $22,290.30 for past-due child support, attorney’s fees, and accrued interest and a $100 fine for contempt of court. The chancery court ordered that Paul could “purge” the contempt by paying Liz the amount in-full by the end of the day on August 5, 2009. Paul paid the arrearage, thereby avoiding jail time for contempt. Because Paul paid the arrearage in-full, the chancellor dismissed Liz’s defense that Paul stood before the court with “unclean hands.”
¶ 6. Prior to the trial, Liz, through her attorney, requested a continuance because Paul had failed to provide responses to Liz’s discovery requests[1] until the morning of the trial. The chancellor denied the request and proceeded with trial. After hearing testimony from the parties, both children, and two neighbors, the chancellor provided a bench ruling finding that a substantial and material change in circumstances adverse to the children’s welfare and best interests had occurred in Liz’s home. The chancery court then proceeded to conduct a best-interests analysis pursuant to Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). The chancellor found that the Albright analysis favored Paul and awarded custody of the children to him, subject to Liz’s visitation.
¶ 7. On appeal, Liz alleges the following assignments of error: (1) the chancellor erred in denying her a continuance in order to respond to Paul’s late discovery responses; (2) the chancellor erred in finding that a material change in circumstances had occurred in Liz’s home; (3) the chancellor erred in his application of the Albright factors and in shifting custody of the children from Liz to Paul; and (4) the chancellor erred in ordering Liz to pay child support in the amount of twenty percent of her adjusted gross income.
STANDARD OF REVIEW
¶ 8. On appeal, this Court will not disturb a chancellor’s factual findings regarding a custody modification unless the chancellor’s findings are “manifestly wrong, clearly erroneous, or the proper *42 legal standard was not applied.” Duke v. Elmore, 956 So.2d 244, 247 (¶ 6) (Miss.Ct.App.2006).
DISCUSSION
I. Whether the chancellor erred in failing to grant a continuance.
¶ 9. Liz argues on appeal that the chancellor erred in denying her requested continuance. Liz asserts that she required the continuance to obtain Paul’s late discovery responses. At the beginning of the trial, Liz moved for this continuance on the ground that Paul had not served his discovery responses until the morning of trial. Paul, however, argued that the parties’ attorneys had previously discussed the discovery responses the day before trial and that his responses contained nothing unexpected and contained no unfair surprise. In denying the continuance, the chancellor also provided that the case would be held open for rebuttal purposes if such a need existed. However, Liz failed to attempt to reopen the case or the discovery issue.
¶ 10. Under Mississippi law, the “decision to grant or deny a continuance is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion that resulted in a manifest injustice.” Pool v. Pool, 989 So.2d 920, 924 (¶ 12) (Miss.Ct.App.2008). This Court will not reverse the denial of a continuance absent a finding of prejudice. Id. at 925 (¶ 13) (citing Cherry v. Hawkins, 243 Miss. 392, 397, 137 So.2d 815, 816 (1962)).
¶ 11. Liz cites Schepens v. Schepens, 592 So.2d 108, 109-10 (Miss.1991), wherein the Mississippi Supreme Court found that the failure to grant a continuance resulted in unfair surprise, such as the failure to disclose witnesses in the discovery responses, which “could have affected the evidence presented and, necessarily, the chancellor’s decision.” The record in the present case, however, reflects that no manifest injustice occurred as a result of the denied continuance, nor does the record reflect any prejudice to Liz as a result of the denial. We, therefore, defer to the discretion of the chancellor in denying the requested continuance and find no error in the record resulting from such denial.
II. Whether the chancellor erred in finding that a material change in circumstances adverse to the children had occurred in Liz’s home.
¶ 12. Liz argues on appeal that the chancellor erred in finding that a material change in circumstances, adverse to the children, had occurred in her home, necessitating a change in the physical custody of the children from Liz to Paul. The law in Mississippi on custody modification is well settled. In order to modify a child-custody order, the party seeking the change in custody bears the initial burden of proving that there has been a material change in circumstances. Anderson v. Anderson, 961 So.2d 55, 58 (¶ 6) (Miss.Ct.App.2007). In determining whether a material change in circumstances has occurred, the chancellor must examine the totality of the circumstances. Id. If the chancellor finds that a material change has occurred, the chancellor must then make a separate assessment to determine if the change is “adverse to the child’s welfare.” Id. (citing Thompson v. Thompson, 799 So.2d 919, 922 (¶ 8) (Miss.Ct.App.2001)). In the event of an adverse material change in circumstances, “the chancellor may determine whether the best interest of the child requires a change in custody.” Id. When analyzing the best interest of the child for the purposes of custody modification, the chancellor must make “on-the-record findings for each of the Albright factors.” Anderson, 961 So.2d at 58 (¶ 6) *43 (citing Sturgis v. Sturgis, 792 So.2d 1020, 1025 (¶ 21) (Miss.Ct.App.2001)).
¶ 13. In the present case, Paul alleged that Liz’s move to Ocean Springs, in addition to other factors, constituted a material change in circumstances which warranted a modification of child custody. Although Mississippi law generally has recognized that a parent’s relocation alone does not constitute a material change in circumstances, we note that the impact of a relocation of the custodial parent upon the child constitutes a factor that the chancellor permissibly considers on the motion for modification. Lambert v. Lambert, 872 So.2d 679, 685 (¶ 24) (Miss.Ct.App.2003); see Porter v. Porter, 23 So.3d 438, 447 (¶24) (Miss.2009) (affirmed the chancellor’s finding that an anticipated change of circumstances in an anticipated move of the mother may support modification of child custody); Lackey v. Fuller, 755 So.2d 1083, 1088-89 (¶¶ 25-29) (Miss.2000) (found that shuttling the children between New York and Mississippi every two weeks failed to constitute the best interests of the children).
¶ 14. In addition, we note that: “The distance of the move is not disposi-tive as to whether a material change in circumstances has occurred; it is the effect the move has on the child and the custody arrangement that is dispositive.” Pearson v. Pearson, 11 So.3d 178, 182 (¶ 10) (Miss.Ct.App.2009). This Court has found that in certain cases, even a short move can result in a material change in circumstances where the move by one party caused the custody arrangement to become impractical or impossible to maintain. Id. at (¶ 9).
¶ 15. In applying precedent, the chancellor viewed the totality of the circumstances in determining the best interests of both children, and the chancellor acknowledged that the children’s best interests constituted the polestar consideration in this determination. Albright, 437 So.2d at 1005. The chancellor properly reasoned that neither remarriage nor the simple move of the custodial parent would justify a change in custody. The chancellor emphasized that he considered many factors, not just the relocation of the custodial parent or mere unhappiness of the children, when determining whether to modify custody in the present case.
¶ 16. The custody dispute pertained to the parties’ two daughters: Mary, who was fifteen years old at the time of the hearing, and Ruth, who was almost nineteen years old and about to be in college. The girls indicated that since the time of the divorce, they had lived primarily with their father. Mary also indicated that even prior to her mother’s relocation to Ocean Springs, she had failed to possess a good relationship with her mother, and she indicated that her mother served as a source of stress in Mary’s life. Ruth testified that she and Mary were best friends, and Ruth explained that Mary had no wish to live with her mother or new step-father in a new location hours away from her sister, natural father, and home community of Saltillo, Mississippi. As a result, Ruth was concerned about Mary’s emotional stability. The chancellor found that the girls possessed a stronger emotional bond with their father, and the chancellor found the geographic separation of the siblings to constitute a factor causing substantial and material change of circumstances. After considering the totality of the circumstances, the chancellor found that clear- and-convincing evidence existed showing that a substantial and material change in circumstances had occurred as reflected in the following: creating stress and depression for the younger daughter, Mary, as a result of a forced move; causing the uprooting of the girls from their home, *44 community, and all they knew and loved; and separating the close siblings from each other.
¶ 17. After analyzing and applying the Albright factors to the facts of the present case, the chancellor found that the factors favored Paul. Albright, 437 So.2d at 1005. The record constitutes substantial evidence to support the chancellor’s decision. We find no abuse of discretion in his consideration and determination of the Al-bright factors. This issue is without merit.
III. Whether the chancellor erred in ordering Liz to pay child support.
¶ 18. Liz argues on appeal that the chancellor erred in ordering her to pay child support in the amount of twenty percent of her adjusted gross income. Liz contends that the chancellor erred in failing to provide written findings as to the reasonableness of applying the statutory child-support guidelines and in failing to consider whether a lower amount of child support was more appropriate. We note that the findings of the chancellor concerning findings of fact, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. Vaughn v. Vaughn, 798 So.2d 431, 433 (¶ 9) (Miss.2001). This Court always reviews a chancellor’s findings of fact, but we will not disturb the factual findings of a chancellor unless such findings are manifestly wrong or clearly erroneous. Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309, 1312-13 (Miss.1989). For questions of law, we apply a de novo standard of review. Harrison County v. City of Gulfport, 557 So.2d 780, 784 (Miss.1990).
¶ 19. As to sufficiency of the chancellor’s findings regarding the reasonableness of the child-support award, Mississippi Code Annotated section 43-19-101(4) (Rev. 2009) provides that:
In cases in which the adjusted gross income as defined in this section is more than Fifty Thousand Dollars ($50,000.00) or less than Five Thousand Dollars ($5,000.00), the court shall make a written finding in the record as to whether or not the application of the guidelines established in this section is reasonable.
Liz argues on appeal that the chancellor erred in failing to provide written findings of reasonableness as required by the statutory guidelines and in failing to consider whether a lower amount of child support was more appropriate. The record reflects that Liz neither raised an objection during trial nor sought a post-trial amendment regarding the adequacy of the chancellor’s findings of the reasonableness of the child-support guidelines and the amount of child-support award in this case. See Vaughn, 798 So.2d at 433-34 (¶ 9) (The supreme court held that the findings of the chancellor concerning findings of fact, particularly in the area of divorce and child support, will generally not be overturned on appeal unless they are manifestly wrong.); West v. West, 23 So.3d 558, 561-62 (¶ 14) (Miss.Ct.App.2009) (This Court found that assignments of error as to the chancellor’s failure to provide specific findings of fact may not be raised for the first time on appeal.).
¶ 20. In Vaughn, 798 So.2d at 434 (¶ 10), the supreme court stated that awards of child support in Mississippi are subject to the guidelines set forth in section 43-19-101. The court further explained that the guidelines constitute a rebuttable presumption as to the amount of support and that the guidelines applied unless the chancellor made a written finding on the record that the application of the guidelines would be unjust or inappropriate. Id. Where the adjusted gross in *45 come calculates to an amount greater than $50,000, the supreme court explained that the statute directs the chancellor to make a written finding in the record as to whether or not application of the guidelines is reasonable. Id. Upon review of the written findings of the chancellor in Vaughn, the supreme court found that appellate review would have benefitted from a more detailed information regarding the reasonableness of the child-support award in that case, but the chancellor’s findings, which set forth his calculations and basis for his award, sufficiently complied with the statute. Id. at (¶ IB).
¶ 21. However, before addressing whether the chancellor in the instant case provided sufficiently detailed findings, we acknowledge that Mississippi Rule of Civil Procedure 52(b) provides that:
When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised regardless of whether the party raising the question has made in court an objection to such findings or has filed a motion to amend them or a motion for judgment or motion for a new trial.
The comment to Rule 52(b) provides that the purpose of the rule “is to enable the appellate court to obtain a correct understanding of the factual issues determined by the trial court as a basis for the conclusions of law and judgment entered thereon.” However, “[a] party who failed to prove his strongest case is not entitled to a second opportunity by moving to amend a finding of fact and conclusion of law.” Id. The comment further explains that “the motion must raise questions of substance by seeking reconsideration of material findings or conclusions.” Id. (citing 9 Wright & Miller, Federal Practice and Procedure, Civil Section 2582 (1971)); see Anderson v. Anderson, 8 So.3d 264, 268-69 (¶¶ 11-15) (Miss.Ct.App.2009).
¶ 22. The record shows that the chancellor explained that he based the child-support award on evidence in the record, including Liz’s adjusted gross income as reflected on a copy of a recent check stub,[2] which provided a statement of her earnings. Additionally, during Liz’s testimony, the chancellor acknowledged that her 8.05 financial statement was unsigned, failed to include a total monthly income, and also failed to include a signed certificate of compliance. Liz’s 8.05 financial statement asserted an adjusted gross income of $60,000. However, the record reflects that the chancellor determined that this amount reflected only her salary, and this amount failed to account for her annual bonus monies. In his bench ruling, the chancellor also notified the parties to inform him as to any errors regarding the mandatory deductions.
¶ 2B. On September 17, 2009, based upon the parties’ request, the chancellor entered an order dismissing the post-trial hearings scheduled to occur on October 2, 2009, and on December 9, 2009. In the dismissal order, the chancellor explained that the court entered such dismissal after being advised that Liz wanted to forego the hearings and pursue an appeal. We turn to precedent and find that in West, 23 So.3d at 561 (¶ 13), this Court similarly addressed a challenge of a chancellor’s findings as to the reasonableness of the child-support guidelines. We stated that the failure to raise the issue to the chancellor resulted in a procedural bar to challenging the chancellor’s failure to make specific findings of fact on the reasonableness of the statutory guidelines. Id. at 561-62 (¶ 14). In this case, we likewise *46 find the challenge of the chancellor’s findings in the instant case procedurally barred. See also Williams v. Williams, 810 So.2d 613, 615 (¶ 9) (Miss.Ct.App.2001) (father’s failure to object at trial to increase in child-support award resulted in a failure to preserve the issue for appellate review).
¶ 24. With respect to the sufficiency of the evidence, the Mississippi Supreme Court has established that: “An award of child support is a matter within the discretion of the chancellor, and we will not reverse that determination unless the chancellor was manifestly wrong in his findings of fact or manifestly abused his discretion.” Porter, 23 So.3d at 449 (¶ 30) (quoting Dufour v. Dufour, 631 So.2d 192, 194 (Miss.1994)). Moreover, the chancellor’s decision may be affirmed if the record supports the award. See Clark v. Clark, 754 So.2d 450, 459 (Miss.1999). In applying precedent to this case, we find that the evidence in the record reflects that the testimony and financial information relied on by the chancellor provides sufficient support for the award of child support. The chancellor explained in his bench ruling that he utilized Liz’s recent check stub, which estimated Liz’s monthly income as $5,245.56, in calculating the child-support award. The record reflects the reasonableness of the chancellor’s reliance upon testimony in the record, financial disclosures, and the recent check stub in his calculations. The record reflects that the chancellor utilized the guidelines of section 43-19-101 when calculating the child-support award. As previously provided, during Liz’s testimony, the chancellor found omissions in her 8.05 financial statement as to her amount of income. Based upon the foregoing, we find no abuse of discretion in the chancellor’s award of child support. This issue lacks merit.
¶ 25. THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. BARNES, J., NOT PARTICIPATING.

. The record on appeal fails to include the actual discovery requests and responses, but according to Paul’s counsel, "there was nothing unexpected in the discovery responses.” Liz’s counsel did raise that Liz’s consumption of alcoholic beverages was more of an issue than previously thought by Liz's counsel. The reasons for not granting a continuance, particularly the immediate start date of the school year, were discussed in the record.

. In his bench ruling, the chancellor referred to the recent check stub as “exhibit 4.”