# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01108-COA

**KRISTEN CULVER**                                                                        **APPELLANT**

**v.**

**CRAIG ROBERT CULVER, JR.**                                                  **APPELLEE**

DATE OF JUDGMENT:                08/11/2021
TRIAL JUDGE:                            HON. MARK ANTHONY MAPLES
COURT FROM WHICH APPEALED:    JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:        JENNIFER SEKUL HARRIS
ATTORNEY FOR APPELLEE:          CAMERON MATTHEW McCORMICK
NATURE OF THE CASE:              CIVIL - CUSTODY
DISPOSITION:                      AFFIRMED - 05/23/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     On August 11, 2021, the Jackson County Chancery Court entered a judgment on Kristen Culver's "Complaint for Modification" and Craig Robert Culver Jr.'s "Counter-Complaint for Modification." This ruling changed physical custody of the parties' children from Kristen to Craig, among other changes. Aggrieved by the ruling of the chancery court, Kristen appeals.

## FACTS AND PROCEDURAL HISTORY

¶2.     Craig and Kristen Culver married on May 9, 2008. They have three male children: CRC, born in January 2009; CDC, born in April 2010; and CMC, born in September 2014

(collectively "boys").[1] Craig and Kristen separated on or about November 24, 2017. Craig

filed a complaint for divorce in the Jackson County Chancery Court on January 26, 2018.

Kristen filed her answer and counter-complaint for divorce on January 31, 2018. Craig filed

his answer to Kristen's counter-complaint on February 2, 2018. A temporary order was

entered on March 21, 2018, giving the parties joint legal and joint physical custody of the

boys, with alternating weeks of custody, until further order of the court. On July 2, 2018, the

parties withdrew their fault grounds for divorce and gave their consent for the court to grant

a divorce on the ground of irreconcilable differences. The parties submitted specific issues

for the trial court's decision, and the trial went forward on that same date. The chancellor's

"Findings of Fact, Conclusions of Law, Ruling and Judgment of the Court" was filed on July

23, 2018. In that order the chancellor found:

> The Court, having weighed the *Albright* factors and upon consideration of the totality of the circumstances, finds that the best interests of the minor children would be served by awarding **primary physical custody** to Kristen. However, the Court's visitation schedule allows Craig to have his children for approximately fourteen (14) days of every month. If Craig takes part in attending their extracurricular activities, he will see the children even more. Craig and Kristen shall have joint legal custody. The Court believes these parties could successfully co-parent after witnessing the congenial nature and respect shown by each party to the other during trial.

(Emphasis added). Both parties testified in the instant proceeding that this provision had

worked well and the parties had been able to successfully "co-parent" their boys as a result

of the order.

¶3.    After dating for about three years, Kristen became engaged to Andrew Ehlmann and

---

[1] Initials have been used to protect the minor children's identities.

they planned to get married in the summer of 2021. Ehlmann was in the Navy and was stationed on the Mississippi coast when they met; however, the couple learned that Ehlmann was being transferred to Virginia. After the marriage, Kristen planned for her and the boys to move to Virginia before the start of the new school year. Recognizing that the "current visitation schedule would not work" when they moved fourteen to fifteen hours away, Kristen filed a complaint for modification of the visitation schedule on April 9, 2021.

¶4.    In response, Craig filed his answer and defenses to Kristen's complaint and a counter-complaint for modification of physical custody of the boys and other relief on April 27, 2021. In his counter-complaint, Craig alleged that Kristen's plans to remarry and move to Virginia constituted "a substantial and material change in circumstances which adversely affects the parties' minor children, which requires a modification of the prior Order of the Court." He asked that he be awarded custody, that his child support obligations be terminated, and that Kristen be ordered to pay child support. Kristen answered Craig's counter-complaint on June 1, 2021, and denied that he was entitled to the relief he requested.

¶5.    Kristen married Ehlmann on June 11, 2021. The competing motions were tried on July 12, 2021,[2] and the chancellor rendered his judgment on August 11, 2021, modifying the prior order. The chancellor found that considering the totality of the circumstances, Kristen's planned move to Virginia created "a material change in circumstances that is adverse to the welfare of the minor children." Further, after considering the *Albright*[3] factors, the chancellor

---

[2] Witnesses at trial were Kristen, Craig, and Craig's stepmother, Helen Steiner.

[3] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

3

found that the "best interest of these three minor children would be served in awarding physical custody to Craig." Kristen filed a motion to alter or amend the August 11, 2021 judgment on August 20, 2021. That motion was denied.

## STANDARD OF REVIEW

¶6.    In *Smith v. Smith*, 318 So. 3d 484, 490-91 (¶18) (Miss. Ct. App. 2021), we set forth the standard of review for cases such as this as follows:

> Our standard of review for a chancery court's ruling on a motion for modification of custody "based on a material change in circumstances" is limited. *Page v. Graves*, 283 So. 3d 269, 274 (¶18) (Miss. Ct. App. 2019) (citing *Carter v. Carter*, 204 So. 3d 747, 756 (¶37) (Miss. 2016)). We will not disturb a court's findings "when supported by substantial evidence unless the [chancery court] abused [its] discretion, was manifestly wrong or clearly erroneous, or an erroneous legal standard was applied." *In re C.T.*, 228 So. 3d 311, 315 (¶6) (Miss. Ct. App. 2017) (quoting *Bowen v. Bowen*, 107 So. 3d 166, 169 (¶6) (Miss. Ct. App. 2012)). The chancery court's "interpretation and application of the law" is reviewed de novo. *Id*. (quoting *Seale v. Seale*, 150 So. 3d 987, 989 (¶5) (Miss. Ct. App. 2014)).

## ANALYSIS

¶7.    Although Craig argued before the trial court that the original 2018 order should be interpreted as awarding Kristen and Craig joint physical custody of the boys, the chancellor found that the order awarded physical custody to Kristen, with liberal visitation for Craig.[4] As a result, because Kristen had sole physical custody, Craig had the burden of proof related to his motion to modify custody. That burden was set forth in *Robinson v. Brown*, 58 So. 3d 38, 42-43 (¶¶12-14) (Miss. Ct. App. 2011), as follows:

> The law in Mississippi on custody modification is well settled. In order to

---

[4] Craig did not appeal the chancellor's interpretation of the original custody arrangement.

4

modify a child-custody order, the party seeking the change in custody bears the initial burden of proving that there has been a material change in circumstances. *Anderson v. Anderson*, 961 So. 2d 55, 58 (¶6) (Miss. Ct. App. 2007). In determining whether a material change in circumstances has occurred, the chancellor must examine the totality of the circumstances. *Id*. If the chancellor finds that a material change has occurred, the chancellor must then make a separate assessment to determine if the change is "adverse to the child's welfare." *Id*. (citing *Thompson v. Thompson*, 799 So. 2d 919, 922 (¶8) (Miss. Ct. App. 2001)). In the event of an adverse material change in circumstances, "the chancellor may determine whether the best interest of the child requires a change in custody." *Id*. When analyzing the best interest of the child for the purposes of custody modification, the chancellor must make "on-the-record findings for each of the *Albright* factors." *Anderson*, 961 So. 2d at 58 (¶6) (citing *Sturgis v. Sturgis*, 792 So. 2d 1020, 1025 (¶21) (Miss. Ct. App. 2001)).

Kristen raises two main issues on appeal. First, she argues that the chancellor erred by finding that her anticipated move to Virginia was a material change in circumstances that had an adverse impact on the children's welfare. Second, Kristen argues that the chancellor erred in his consideration and evaluation of the *Albright* factors. We will address these issues separately below.

> **I. Did the chancellor err by finding that a material change in circumstances had occurred that adversely impacted the children's welfare?**

¶8.    Kristen contends that the anticipated move to an "unknown" area was the sole basis for the chancellor's determination that there had been a material change in circumstances that adversely affected the children. She argues that there was no evidence presented that would show that "the children were in fact adversely effected by the 'unknowns'" of the move to Virginia. As a result, Kristen maintains that the chancellor erred by basing his decision on his speculation of some "unspecified harm" to the children.

5

¶9.     We should first acknowledge that the children had not "yet" suffered any adverse effect of the anticipated move. However, in *Porter v. Porter* (*Porter II*), 23 So. 3d 438, 448 (¶25) (Miss. 2009), the supreme court found that there was no error in the consideration of "pre-move petitions and orders to modify custody in both sole and joint custody contexts." The court noted with approval the decision of this Court in *Porter v. Porter* (*Porter I*), 23 So. 3d 470, 474 (¶¶11-12) (Miss. Ct. App. 2008), by stating:

> Thus, this Court concludes that the Court of Appeals wisely "reject[ed] a blanket ban on all modifications based on anticipated adverse material change[,]" reasoning that, to hold otherwise, "Tim would have been obliged to wait until Rachel moved with the children to Memphis before filing for modification. Under our current system, Rachel would then have been required to return to Jackson to respond and defend."

*Porter II*, 23 So. 3d at 448 (¶25).  Kristen may well have been the first to recognize that a modification to the existing custody arrangement would be needed when she filed for a modification on April 9, 2019, months before her anticipated move. Craig responded by filing his motion for a modification of custody. Thus, neither side waited for Kristen to move to Virginia before addressing these matters.

¶10.    Kristen had sole physical custody of the children; however, Craig had substantial periods of visitation, fourteen or more days each month. With Kristen moving fourteen hours away, the existing order was unworkable. Kristen asked for a change in the visitation schedule, and Craig asked for a change in physical custody so that the children could stay with him in Mississippi.

¶11.    While our law is clear that a custodial parent's relocation alone does not constitute a material change in circumstances, it is equally clear that the impact of the relocation upon

6

the children and the custody arrangement are factors to be considered by the chancellor when a modification has been requested. In *Munday v. McLendon*, 287 So. 3d 303, 310 (¶29) (Miss. Ct. App. 2019), we explained:

> "Although Mississippi law generally has recognized that a parent's relocation alone does not constitute a material change in circumstances, we note that the **impact of a relocation of the custodial parent upon the child constitutes a factor that the chancellor permissibly considers on the motion for modification.**" *Robinson v. Brown*, 58 So. 3d 38, 43 (¶13) (Miss. Ct. App. 2011) (citing *Lambert v. Lambert*, 872 So. 2d 679, 685 (¶24) (Miss. Ct. App. 2003)). This Court has found **even a short move can result in a material change in circumstances where the move causes the custody agreement to become impractical.** *Id.* at (¶14) (citing *Pearson v. Pearson*, 11 So. 3d 178, 182 (¶10) (Miss. Ct. App. 2009)).

(Emphasis added). In *Smith*, 318 So. 3d at 492-93 (¶25), we explained:

> In *Giannaris v. Giannaris*, 960 So. 2d 462, 468 (¶11) (Miss. 2007), the Mississippi Supreme Court held "that the mere moving of the custodial parent does not constitute a material change in circumstances for child custody modification purposes." "Nor is the distance moved 'dispositive as to whether a material change in circumstances has occurred; **it is the effect the move has on the child and the custody arrangement that is dispositive**.'" *Welton v. Westmoreland*, 180 So. 3d 738, 749 (¶34) (Miss. Ct. App. 2015) (quoting *Pearson v. Pearson*, 11 So. 3d 178, 182 (¶10) (Miss. Ct. App. 2009)).

(Emphasis added).

¶12.    The chancellor considered the totality of the circumstances in reaching his decision as to whether there had been (or would be) a material change in circumstances and whether any such change had (or would) adversely impact the children should they move to Virginia with their mother and her new husband. The chancellor made it clear that the move itself did not constitute such a change. He made it abundantly clear that he found no fault in Kristen by relocating to Virginia. In fact, the chancellor repeatedly praised both Kristen and Craig

7

on their co-parenting of their boys. The chancellor recognized the civility that existed between them and both of their extended families in their interaction with the boys and with one another.

¶13. The chancellor's decision was based upon the impact the move would have upon the children. He noted that the three boys, ages twelve, eleven, and six, had lived in the Hurley, Mississippi community all their lives. He noted that Craig still lives in the marital home where the boys had grown up. He recognized that if the boys stayed with Craig they could continue to attend the Jackson County Schools. If they remained with their father, they would continue the close relationships they had developed with the extended families of both parents and other life-long friends in their community. The court did draw a contrast between the stability the boys would enjoy by remaining in Hurley versus the "unknown" they would experience by moving with their mother to Virginia where they had no existing relationships. The court noted that while the children had developed strong relationships with their extended families in the Hurley area, neither parent had any family in the area of Norfolk, Virginia. Kristen's move to Virginia would mean that either she or Craig would have substantially less time with their children. However, the chancellor also focused upon the boys' loss of time with their extended families that had been, apparently, pretty important in their lives.

¶14. The chancellor found that

> in considering the totality of circumstances in that the children's school,
> family, friends, community—essentially their entire lives—have been in and
> around Jackson County and what a relocation would entail for these three
> children, it is impressed upon this Court that requiring them to relocate to an

8

area vastly unknown to both the children and Kristen rises to a material change in circumstances that is adverse to the welfare of the minor children.

As we held in *Munday*, 287 So. 3d at 309-10 (¶26),

> "[s]o long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004) (quoting *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000)).

We find that there was substantial evidence to support the chancellor's finding that the move to Virginia constituted a material change in circumstances that would have an adverse effect upon the children. This issue is without merit.

### II. Was the chancellor's analysis of the *Albright* factors manifestly wrong?

¶15. Kristen argues that "the trial court's analysis of the *Albright* factors also fails to follow the evidence presented and was manifestly wrong." Once the chancellor found a material change in circumstances that was adverse to the children's welfare, the chancellor correctly moved to an *Albright* analysis in order to determine whether modification was in the best interest of the children. *See White v. White*, 26 So. 3d 342, 351 (¶28) (Miss. 2010) ("If the court finds an adverse material change, then the next step is to apply the *Albright* factors to determine whether modification is in the child's best interest.").

¶16. In his order, the chancellor identified each of the *Albright* factors and made findings as to each. Kristen argues that the chancellor erred by not finding certain factors in her favor. First, Kristen mentions the age, health, and sex of the children. The chancellor found under this factor that the three boys were currently twelve, eleven, and six years of age. The eldest

9

had been diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), but otherwise all of them were in good health. The chancellor noted that since all three children were male, the factor would favor Craig slightly, but the chancellor found that otherwise the factor was neutral. Kristen's brief only mentions that the boys "were nine, seven, and three years of age." Without further argument, we assume Kristen was pointing out the ages of the boys at the time of the original custody order.

¶17. Next, Kristen comments on the "[d]etermination of the parent who had the continuity of care." The chancellor noted the provisions of the original order provided that their time with the boys was essentially split between the parties. The court also acknowledged that there had been times when Craig's employment required him to be out of town, so he could not always exercise all his visitation. The chancellor found this factor slightly favored Kristen. Kristen argues that although she had the boys sixteen days a month, and Craig had them fourteen days a month, she still had been the primary caregiver for the boys for medical and dental appointments. She argues that this factor should have favored her more than "slightly."

¶18. As for the factor of employment, the chancellor found that Craig had worked for AT&T for over twenty-one years. He worked 8 a.m. to 5 p.m. five days a week, with an occasional Saturday. The court noted that Kristen plans to seek full-time employment as a dental assistant once the family is settled in Virginia. Since the divorce, she had worked in a childcare facility and then in a medical office. She returned to childcare for more flexible hours for her children. The court found this factor to be essentially neutral. The chancellor

stated that it favors Craig as to "longevity and overall stability" and favors Kristen because her hours have coincided better with the boys' school schedules. Since she had chosen her work hours around the needs of the children, she argues this factor should have favored her.

¶19. Kristen contends as to the "stability of the home" factor that as a result of the divorce, she was unable to stay in the marital home. She also contends that the chancellor penalized her for moving to Virginia. The chancellor actually found that "[a]s to the stability of the home environment, although Kristen is not unstable, Craig has been more consistent in his housing arrangements well before the divorce. This factor favors Craig."

¶20. As for the home, school, and community record of the children, the chancellor found this factor to be neutral. Kristen makes no argument that this factor should have favored her. Instead, she points to the language of the chancellor's order to argue that she was being penalized for not remaining in the marital home and for wanting to move the children away from Jackson County.

¶21. The chancellor found that the twelve-year-old expressed a desire to remain with Craig. Kristen argues that he had been with Craig the day of the hearing. She argues the children had all been excited about the move. Kristen maintains that the eldest child began to express that he did not want to go only right before the move.

¶22. After considering all the factors, the chancellor found that this was a "unique case" for him. He again praised both parents for their co-parenting of the boys. Before he ruled he expressed that his decision as to custody in this case was based upon a razor-thin margin. However, he found the best interest of the boys was served by granting Craig sole physical

11

custody.

¶23.    In a similarly close case, this Court stated in *Irle v. Foster*, 176 So. 3d 25, 31 (¶26)

(Miss. Ct. App. 2013):

> As the chancellor acknowledged, this custody decision was not clear-cut. The chancellor was acutely aware that his decision would separate Britney from her only living parent. But the chancellor awarded the Fosters custody based on what he determined would be in Britney's best interest. In affirming the chancellor's decision, we are mindful that "[d]etermining custody of a child is not an exact science," but instead "one of the most difficult decisions that courts must make." *O'Briant* [*v. O'Briant*], 99 So. 3d [802,] 805 (¶15) [(Miss. Ct. App. 2012)] (quoting *Lee* [*v. Lee*], 798 So. 2d [1284,] 1288 (¶15) [(Miss. 2001)]; *Brewer v. Brewer*, 919 So. 2d 135, 141 (¶21) (Miss. Ct. App. 2005)). "[E]ven when the trial judge sensitively assesses the factors noted in *Albright* and [its] progeny, the best the [chancellor] can offer is a good guess." *Love v. Love*, 74 So. 3d 928, 932 (¶17) (Miss. Ct. App. 2011) (quoting *Buchanan v. Buchanan*, 587 So. 2d 892, 897 (Miss. 1991)). **Because it is not the role of this court to "second guess" that decision—but to instead affirm that decision in the absence of legal error or manifestly erroneous factual findings—we affirm the chancellor's judgment** that awarded the Fosters custody of Britney.

(Emphasis added). In the present case, we find that the chancellor's *Albright* analysis was not

manifestly erroneous. The chancellor acknowledged that the decision was a difficult one

based upon the evidence. He did not find fault with either party. He made the decision he

determined to be in the best interest of the children. We will not "second guess" his decision

in this regard.

## CONCLUSION

¶24.    We find that the issues raised by Kristen are without merit. We further find that the

chancellor's finding that there had been a material change in circumstances in the custodial

home that would adversely affect the children was supported by substantial evidence. Finally,

we find that the chancellor's finding that the best interest of the children required the change in physical custody of the children from Kristen to Craig was not manifestly wrong. Therefore, we affirm the chancellor's judgment.

¶25. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McCARTY AND SMITH, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LAWRENCE, J., NOT PARTICIPATING.**