942 So.2d 255 (2006)
Helen E. SWARTZFAGER, Appellant,
v.
Grady Paul DERRICK, Jr., Appellee.
No. 2005-CA-00648-COA.
Court of Appeals of Mississippi.
November 7, 2006.
Robert R. Marshall, attorney for appellant.
Michael Adelman, Hattiesburg, attorney for appellee.
Before MYERS, P.J., SOUTHWICK and GRIFFIS, JJ.
MYERS, P.J., for the Court.
¶ 1. This case involves the modification of a child custody order from the Chancery Court of Lamar County, Honorable Johnny Lee Williams presiding. In this case, Appellee Grady Paul Derrick, Jr. sought physical custody of his minor child through a modification of the original child custody agreement. The original agreement was incorporated into the divorce decree and gave physical custody to Appellant Helen E. Swartzfager, the child's mother. An order temporarily changing custody was entered, but nearly three years passed before a hearing was held on the motion *256 for modification. At the final hearing, the chancellor held that Helen had the burden of proving a material change in circumstances since the date of the temporary order. She failed to do so, and Grady was granted permanent physical custody. Aggrieved by the courts ruling, Helen, asserts error on the following issue:
WHETHER THE CHANCELLOR WAS MANIFESTLY WRONG, ABUSED HIS DISCRETION, AND APPLIED AN ERRONEOUS LEGAL STANDARD FOR MODIFICATION OF CHILD CUSTODY WHEN RENDERING HIS FINDINGS OF FACT AND CONCLUSIONS OF LAW AND FINAL JUDGMENT AS WELL AS IN OVERRULING HELEN'S MOTION FOR POST JUDGMENT RELIEF?
¶ 2. Finding no error, we affirm the rulings of the trial court.

STATEMENT OF THE FACTS
¶ 3. Helen E. Swartzfager and Grady Paul Derrick, Jr. divorced on June 21, 2000. Incorporated into the divorce decree was a child custody, child support, and property settlement agreement. The custody agreement provided that both Helen and Grady would each spend equal amounts of time with their minor child, Grady (Zeke) Paul Derrick, III. Although Helen, in title, was granted primary physical custody, the agreement implemented an alternating physical custody schedule which provided equal time between the parents, and both parents retained joint legal custody. At the time of the divorce decree both Helen and Grady lived in Hattiesburg, Mississippi and the alternating custody schedule appeared easily workable.
¶ 4. On November 27, 2001 Grady filed a contempt citation against Helen and a motion to modify custody alleging that Helen had violated certain provisions of the original custody agreement established for the protection of the child. Just prior to Grady's filings, Helen began experiencing anxiety and depression brought on by work-related stress. Allegations of prescription drug abuse arose. Ultimately Helen was involuntarily committed in Jones County and placed in the Pine View detox unit for psychiatric evaluation and drug screening. Although suffering from anxiety and depression, Helen was found to have had no addiction to prescription medications or other narcotics, and the allegations proved to be totally unfounded. While Helen was in custody, awaiting the court ordered medical evaluation, Grady filed an emergency motion seeking custody of Zeke. In the apparent best interests of the child, the court granted the relief requested.
¶ 5. A hearing on Grady's November 27, 2001 motion to modify custody had been set for December 17, 2001, but was canceled at the request of Helen's counsel. Subsequently, in February 2002, the parties entered into an agreed temporary order. The order granted temporary physical custody to Grady and allowed Helen weekend visitation with Zeke in the home of Zeke's maternal grandfather. In August 2002, Helen filed her own contempt motion against Grady in which she alleged that he was not complying with the agreed visitation; however, she did not seek physical custody of the child at this time. Helen did not file her counter-petition for modification seeking restoration of the original custody agreement until June 29, 2004, nearly two and one-half years after the entry of the agreed order modifying custody in favor of Grady. In the interim, Helen sold her law practice in Laurel, relocated to Pascagoula, took a job with a local firm, remarried, and had another child. The record is unclear as to why she waited more than two years to seek the reinstatement of the original custody *257 agreement, but she attributes the delay to poor legal counsel and a lack of funds needed to hire adequate representation. We note that Helen is an attorney.
¶ 6. A hearing was held on Helen's citation for contempt and modification of child custody on December 7, 2004. The chancellor found that since the temporary order had been in effect for nearly three years, the temporary order had assumed the nature of a permanent order. Therefore, he placed on Helen the burden to prove a material change in Grady's home, adverse to the child, and that the best interests of the child warranted a modification of custody. After hearing testimony, the chancellor held that Helen had failed to meet her burden. The chancellor then went through each of the enumerated Albright factors and found that the best interests of the child were served by allowing Grady to retain physical custody of Zeke. The temporary modification granting custody to Grady was then ordered permanent; however, Helen was granted custody for all but one week of the summer months, and visitation on alternating weekends during the school year, and alternating Christmas, Thanksgiving, and spring break vacations.

LEGAL ANALYSIS
STANDARD OF REVIEW
¶ 7. The standard of review in domestic relations cases is established and clear. Child custody matters fall within the sound discretion of the chancellor. Sturgis v. Sturgis, 792 So.2d 1020, 1023, (¶ 12) (Miss. Ct.App.2001). Therefore, when this Court reviews an award of child custody, the decision of the chancellor will be affirmed unless it is shown to be "manifestly wrong, clearly erroneous," or that the chancellor applied an erroneous legal standard. Roberson v. Roberson, 814 So.2d 183, 184(¶ 3) (Miss.Ct.App.2002). The chancellor's decision must be supported by substantial evidence established by the record of the proceedings. Id.
DISCUSSION
¶ 8. Helen argues that the chancellor applied an erroneous legal standard regarding modification of child custody, by placing upon her, the custodial parent, the burden of proving that a material change had occurred in the home of the father, adverse to the best interests of the child. She asserts that Grady only had temporary custody of the child, and that before the court could award him permanent custody, he had the burden of proving that a material change adverse to the best interests of the child had occurred in her home. Helen argues that Grady neither pled nor put on any proof that anything adverse to the child had occurred in her home, and that it was error for the chancellor to place the burden of proof upon her, to award custody to Grady upon this basis, and to deny her petition for post-judgment relief. Helen prays that this Court reverse the judgment of the Lamar County Chancery Court and render a judgment restoring to her physical custody of Zeke. Grady argues that the court was correct in holding that the temporary order had acquired incidents of permanency, making Grady the de facto custodial parent, and therefore, Helen had the burden of proof. He asserts that the chancellor correctly determined that Helen had failed to meet her burden and that the best interests of the child were served by awarding him permanent physical custody.
¶ 9. As to modification of child custody, the law is well-settled. In order to transfer custody of a child, the non-custodial parent has the burden of proving that since the decree or order sought to be modified, a material change has occurred in the custodial home which adversely affects *258 the child. Polk v. Polk, 589 So.2d 123, 129 (Miss.1991). When considering this alleged change, the court must evaluate the evidence under the totality of the circumstances. Id. A chancellor's decision modifying child custody will not be disturbed so long as it is supported by substantial evidence found in the record and he applied the following legal standard: "[T]he non-custodial parent must pass a three-part test: `a substantial change in circumstances of the custodial parent since the original custody decree, the substantial change's adverse impact on the welfare of the child, and the necessity of the custody modification for the best interest of the child.'" Pierce v. Chandler, 855 So.2d 455, 457(¶ 9) (Miss.Ct.App.2003) (quoting Sanford v. Arinder, 800 So.2d 1267, 1271(¶ 15) (Miss.Ct.App.2001); Brawley v. Brawley, 734 So.2d 237, 241(¶ 12) (Miss.Ct.App. 1999)). The best interest of the child remains the court's polestar consideration. Albright v. Albright, 437 So.2d 1003, 1003 (Miss.1983).
¶ 10. Helen cites Forsythe v. Akers, 768 So.2d 943, 948(¶ 15) (Miss.Ct.App. 2000), for her assertion that the chancellor erred in placing the burden of proof upon her and in finding that the temporary award had taken on incidents of permanency, making Grady the de facto custodial parent. In Forsythe, this Court held that an agreement for temporary modification cannot be used as evidence of a material change in circumstances. Id. Helen also contends that Grady's allegation that an adverse effect would result, should the court fail to grant the modification, is an insufficient basis to modify child custody. McMurry v. Sadler, 846 So.2d 240, 244(¶ 14) (Miss.Ct.App.2002). We agree that a decision based upon what would or might occur is contrary to the law; however, we do not find that to have been the case here. Rather, we find our previous holding in Thompson v. Thompson, 799 So.2d 919 (Miss.Ct.App.2001), to be controlling on this issue. In Thompson, this Court upheld a chancellor's ruling that a temporary order had acquired incidents of permanency where, as here, the order had been allowed to operate unchallenged for a period of years. Id. at 926-27(¶ 30). The chancellor held that, under the temporary order, the non-custodial parent had in fact been the de facto custodial parent for four years and, therefore, the custodial parent challenging the temporary order had the burden of proof for a modification of that order. Id. at 926(¶ 26). As in Thompson, the chancellor in the case now before this Court found that the temporary order had acquired incidents of permanency and that Grady had been the de facto custodial parent for a period of nearly three years. Accordingly, the chancellor placed the burden of proof upon Helen, the petitioner, for modification. We find the chancellor's ruling as to which party had the burden of proof to be consistent with Thompson, and assign no error thereto.
¶ 11. After hearing testimony of the parties, the chancellor found Helen to have failed to meet her burden of proof. An Albright analysis was then applied by the trial court and resulted in a determination that the child's best interests would be served by remaining in his father's home. The chancellor articulated in his judgment decree that to remove the child from his home of the past three years, where he had apparently thrived, would be "to cause him unnecessary instability." Ever vigilant of the polestar consideration in child custody matters, we concur with the chancellor that the child's best interests are served by remaining with his father. Albright, 437 So.2d at 1003.
CONCLUSION
¶ 12. As in Thompson, we must make clear that this opinion is not to be interpreted *259 as holding that temporary custody orders normally should be given permanent status. However, where a temporary order remains uncontested for a period of years, we find such orders to have acquired incidents of permanency which necessitate that such an order be treated as permanent for the purpose of assigning the burden of proof, and will not overrule a chancellor who makes a decision upon this basis. Accordingly, we hold that the chancellor did not abuse his discretion, commit manifest error, or apply an erroneous legal standard in awarding custody of Zeke to Grady or in denying Helen's motion for post-judgment relief. Therefore, the judgment of the Lamar County Chancery Court is affirmed.
¶ 13. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.