KING, C.J., for the Court.
¶ 1. David Quadrini appeals the decision of the chancellor dismissing his petition for modification of custody of his two children. Quadrini sought full physical custody of the children. Following a hearing, the chancellor granted Brandi Spradley’s motion to dismiss on the grounds that Quadri-ni failed to prove that, despite a material change in Spradley’s circumstances that created an adverse effect on the children, a change of custody was in the children’s best interest. Quadrini timely appealed. Finding no error, this Court affirms.
FACTS
¶ 2. David Quadrini and Brandi Quadrini Spradley divorced on April 2, 2003. The parties agreed to an irreconcilable differences divorce and submitted “the remaining issues of custody, child support, visitation, property division, marital bills, and attorneys’ fees” to the chancellor for disposition. Following an evidentiary hearing, the chancellor ruled on the outstanding issues, including child custody, on September 11, 2003. In that order, the chancellor set forth the appropriate standard for awarding child custody and analyzed the evidence against the factors enumerated in Albright v. Albright, 437 So.2d 1003 (Miss.1983). Following that analysis, the chancellor determined that it was necessary to enter a temporary custody order and stated as follows:
21. Other factors relevant to the parent-child relationship: Although the majority of the Albright Factors favor Mrs. Spradley to b[sic] awarded paramount custody of the children, the Court finds the parties’ lives to be in significant transition and adjustment, so much so that awarding permanent custody to either party would be premature.... [T]he Court finds that it is in the best interest of the minor children of the parties that Mr. Quadrini and Mrs. Spradley be temporarily awarded joint legal and physical custody of Tristan and Francesca, and that the children reside with their mother during the school term and with their father during the majority of the summer....
The Court finds that due to the current state of transition in the lives of the respective parties including employment responsibility and personal relationships, the Court is of the opinion that it should retain jurisdiction to modify custody or visitation to suit the best interest of the children, as opposed to having to meet the burden of showing a material change of circumstances adversely affecting the best interest of the children. Accordingly, this Court retains such jurisdiction.
¶3. The circumstances that gave the chancellor pause are referred to periodically and in piecemeal fashion in the record currently before this Court. At the time of the chancellor’s initial order, Qua-drini, who works in the restaurant business, carried a heavy and demanding workload. As a result, he relied heavily on baby-sitters to help him during his visitation with the children. Spradley apparently had engaged in extra-marital affairs prior to the parties’ decision to separate and divorce. At the time of the divorce, Spradley and her children were living with Bill Spradley, with whom she had conducted an extra-marital affair, and the chancellor was concerned that Bill Spradley might be displacing Quadrini as the children’s father figure. The Spradleys were married in October 2003, just weeks after the chancellor temporarily ruled on the child custody issue.
*578 ¶ 4. On May 27, 2004, Spradley filed a petition for modification and a motion for citation for contempt. Quadrini also filed a motion for citation for contempt. Both parties raised issues regarding visitation and handling of the children, but neither party raised the issue of modifying custody. The chancellor ruled on these motions on July 26, 2004. In the final paragraph of his order, the chancellor ordered that “[t]his Court shall retain jurisdiction to modify this Judgment. This Judgment shall remain temporary, as opposed to having to meet the burden of showing a material change of circumstances adversely affecting the best interest of the children.”
¶ 5. On September 29, 2005, Quadrini filed a petition for modification and other relief. In that petition, Quadrini alleged that he had not had visitation with his children during the months of August and September 2005. Quadrini also alleged that Spradley had failed to pay half of an outstanding medical bill, as required by the divorce decree. Finally, Quadrini requested a change in custody, arguing that “[bjecause of material changes in circumstances whereas Brandie has not secured a permanent and stable home life and not enrolled their children in school and not allowed visitation, John David petitions this Court to allow him physical custody of the children while the parties retain joint legal custody of the children.” Quadrini asserted in his motion that a material change in circumstances had occurred, but he also argued that even without a finding of a material change in circumstances, the chancellor should modify custody pursuant to the best interest standard stated in the chancellor’s initial decree. In support of this argument, Quadrini cited the chancellor’s initial declaration in the custody decree that he “retained jurisdiction to modify custody or visitation to suit the best interest of the children, as opposed to having to meet the burden of showing a material change of circumstances adversely affecting the best interest of the children.”
¶ 6. The chancellor conducted a hearing on October 28, 2005. Quadrini presented evidence that Spradley was currently living in a state of flux, due to the impact of Hurricane Katrina on the Mississippi Gulf Coast. The chancellor heard evidence that the children were living in their great-grandparents’ house in Biloxi with the Spradleys, the Spradleys’ new baby, and the children’s maternal grandparents. Quadrini also testified that Spradley was driving the children seventeen miles each way to and from school in Long Beach, a forty-minute commute via Interstate, and that Spradley had pulled the children from private school, a move that he asserted caused his son’s grades to fall significantly. Quadrini asserted, through his testimony, that he could provide the children with a more stable household, more quality time, and better opportunities. Quadrini also presented testimony that Spradley had quit her job as a teacher to pursue a singing career and that Spradley was considering a move to Tennessee to pursue that career.
¶ 7. Spradley testified as an adverse witness. She acknowledged that her family was currently in transition. She defended her choice in commuting, arguing that the children had previously attended that school and were in familiar surroundings. Spradley further testified that the family planned to move to Long Beach and rebuild, although she acknowledged that the family initially would have to live in a FEMA trader. She also defended her decision to pursue a singing career but denied that a move was imminent or inevitable, stating that she and her husband were making their decisions “one day at a time.”
*579 ¶ 8. Following the hearing, the chancellor denied Quadrini’s motion for modification. The chancellor agreed that due to the effects of Hurricane Katrina, Sprad-ley’s circumstances had worsened. The chancellor stressed, however, that the material change in circumstances was due solely to the impact of Hurricane Katrina and that he perceived the Spradleys to be making the best decisions that they could under difficult circumstances. The chancellor also stated that had Quadrini been in his current living situation at the time of the chancellor’s initial custody decree, he would have given full custody of the children to Quadrini. While the chancellor felt that Quadrini currently had the better situation, the chancellor also perceived that the Spradleys’ situation, like the situation of so many other families on the Gulf Coast, was temporary and would improve. Setting aside the issue of Hurricane Katrina, the chancellor could not find that there was an adverse effect on the children. Accordingly, the chancellor concluded that under the limited standard of review to alter a custody agreement — that a material change in circumstances adversely affected the children and that a change in custody was in the children’s best interest — he could not modify the custody arrangement.
¶ 9. On appeal, Quadrini argues that the chancellor erred as a matter of law in denying Quadrini’s motion for modification. Quadrini also argues that the chancellor should have applied the “best interest of the children standard” as set forth in the chancellor’s original, temporary decree and not the “material changes in circumstances adversely affecting the children” standard, but he contends that under either standard, he was entitled to an award of full physical custody.
¶ 10. Spradley raises the issue of jurisdiction in her brief. Spradley argues that the Court does not have jurisdiction to hear an appeal from a denial of a motion to modify a temporary order of custody. In the event that the Court does have jurisdiction to hear the appeal, Spradley argues that the chancellor applied the correct legal standard and correctly concluded that a change in custody was not warranted.
STANDARD OF REVIEW
¶ 11. A chancellor’s findings of fact are entitled to great deference, and this Court will not disturb a chancellor’s finding of fact “when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.” Sanderson v. Sanderson, 824 So.2d 628, 625(¶ 8) (Miss.2002). The chancellor’s application and interpretation of the law, however, are subject to de novo review. See Vaughn v. Vaughn, 798 So.2d 431, 433(¶ 9) (Miss.2001).
¶ 12. With regard to the question of subject matter jurisdiction, this issue may be raised by any party at any time, including being raised for the first time on appeal. See M.R.C.P. 12(h)(3). The question of subject matter jurisdiction is a question of law subject to de novo review. Patriot Commer. Leasing Co. v. Jerry Enis Motors, Inc., 928 So.2d 856, 863(¶ 22) (Miss.2006).
ANALYSIS
1. Subject matter jurisdiction
¶ 13. Spradley argues that if, as Quadrini claims, the chancellor’s custody September 2003 decree and May 2004 order were temporary custody orders subject to modification under the “best interest of the child” standard, then the custody decree was not a final order. Accordingly, Quadrini would effectively be appealing a denial to modify a non-final order, and only final orders are ripe for appeal.
*580 ¶ 14. In order for this Court to have jurisdiction in this case, the chancellor’s order must be final. This Court does not have jurisdiction to hear appeals from temporary orders. See Michael v. Michael, 650 So.2d 469, 471 (Miss.1995). See also Miss.Code Ann. § 11-51-3 (Supp.2006).
¶ 15. Both the original child custody decree in September 2003 and the subsequent order in July 2004 state that the chancellor is retaining jurisdiction to modify the child custody agreement under the “best interest of the child” standard. The best interest of the child is determined by balancing the Albright factors and is the standard used to make the initial determination of custody.
¶ 16. The September 2003 order clearly states that the chancellor intended for the order of custody to be temporary, as evidenced by the chancellor’s statement that “the Court finds the parties’ lives to be in significant transition and adjustment, so much so that awarding permanent custody to either party would be premature.... ” Likewise, the July 2004 order retained jurisdiction to modify the custody agreement under the less burdensome Albright standard. Despite these two clear statements, however, the chancellor, in his order denying Quadrini’s motion for modification, applied the more stringent “material change in circumstances” standard, rather than the Albright standard indicated in his previous orders.
¶ 17. Temporary orders that acquire “incidents of permanency” become permanent orders for the purpose of assigning the burden of proof in child custody modification cases. Swartzfager v. Derrick, 942 So.2d 255, 258(¶ 10) (Miss.Ct.App.2006); Thompson v. Thompson, 799 So.2d 919, 926-27 (¶¶ 29-30) (Miss.Ct.App.2001). In both cases, this Court held that the passage of time — four years in Thompson and almost three years in Swartzfager— was sufficient to provide the temporary orders with “incidents of permanency,” thereby creating a permanent order of the temporary order and shifting the burden of proof to the non-custodial parent to demonstrate a need for a change in custody by a showing of a material change in circumstances adversely affecting the child. See Swartzfager, 942 So.2d at 258(¶ 10); Thompson, 799 So.2d at 927(¶ 30).
¶ 18. In the case sub judice, the chancellor’s September 2003 order refrained from entering a permanent order of custody due to the state of transition in which both parents found themselves immediately following the divorce. After weighing the Albright factors, the chancellor opted to grant temporary physical custody to Spradley with liberal visitation for Quadri-ni. Nothing in that order indicates when, or under what circumstances, the chancellor intended to revisit the issue of custody and enter a permanent order. Quadrini appeared before the chancellor in May 2004, having filed a motion for citation for contempt against Spradley.[1] Quadrini filed a second motion for citation for contempt on August 20, 2004, although it is unclear from the record if or when the chancellor ruled on that motion. At no time, until the filing of his petition on September 29, 2005, more than two years after the chancellor’s entry of the temporary order, did Quadrini seek to modify custody. This lapse in time between the original order and the order from which Quadrini appeals, when combined with the lack of criteria to trigger the chancellor’s *581 review of the original temporary order allowed the September 2003 custody order to acquire “incidents of permanency” that transformed the temporary order into a permanent order.[2]
¶ 19. Because this Court finds that the September 2003 order became a permanent order, Quadrini is properly appealing the denial of his motion for modification as an appeal from a final order. The Court has jurisdiction to hear the appeal.
2. Whether the chancellor erred in failing to award custody to Qua-drini
¶ 20. The proper legal standard for child custody modification is as follows:
(1) whether there has been a material change in circumstances which adversely affects the welfare of the child and (2) whether the best interest of the child requires a change of custody. Weigand v. Houghton, 730 So.2d 581, 585 (1999). In considering such changes, the chancery court should view the evidence within the totality of the circumstances. Spain v. Holland, 483 So.2d 318, 320 (Miss.1986). Once a material change is found, a modification of custody is warranted only if it would be in the best interest of the child. Weigand, 730 So.2d at 585. In order for this Court to find that a chancellor has not abused his discretion in these matters, there must be sufficient evidence to support his conclusions. Id.
Floyd v. Floyd, 949 So.2d 26, 29(¶ 10) (Miss.2007). The decision is a multi-step process. Even if a chancellor finds that a material change in circumstances adversely affects the children, the chancellor must “then go forward and determine whether the best interests of the child justify a change of custody.” Ash v. Ash, 622 So.2d 1264, 1266 (Miss.1993) (citing Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss.1984)).
¶21. The chancellor denied Quadrini’s motion for modification, stating that “[t]he circumstances that I have to look to is did *582 the conditions deteriorate on the mother’s side. And I would say, yeah, they have. But when I go through the Albright factors ... I can tell you that my analysis of it would not cause me to change custody of the children at this time.” The chancellor, in a lengthy ruling from the bench, concluded that the material change in circumstances adversely affecting the children was due solely to Hurricane Katrina and that he was “of the opinion that it’s all uphill from here.” The chancellor opined that he believed Spradley was making sacrifices and decisions that were in the best interest of the children. While he admitted to being tempted to modify custody, the chancellor acknowledged that “[t]he criteria on material change in circumstances is not, unfortunately, that things have changed and now dad is in a better position than he was before” and denied Quadrini’s motion.
¶ 22. This Court holds that the chancellor applied the correct legal standard regarding child custody modifications. The chancellor found that Spradley had experienced a material change in circumstances that adversely affected the children. The chancellor ultimately determined, however, that the best interest of the children, as analyzed under the Albright test, did not require a change in custody. This reasoning directly follows the multi-step process required under Mississippi law. Accordingly, the chancellor did not err in denying Quadrini’s motion for modification and refusing to modify the custody arrangement.
¶ 23. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., NOT PARTICIPATING.

. Spradley filed a petition for modification of custody and a motion for citation of contempt as well, as referenced in the chancellor’s July 26, 2004, order on the motions. That document, however, is not contained in the record.

. In both Swartzfager and Thompson, the chancellor entered a temporary order modifying custody due to mental health issues affecting the custodial parents’ ability to care for their children. In both cases, there is also no indication that the chancellor ordered regular status hearings. Accordingly, when the former custodial parents sought to re-gain custody of their children long after they had recovered from their illnesses, this Court properly held that the temporary orders had become permanent.
In contrast to the Swartzfager and Thompson decisions, the Mississippi Supreme Court has held that a three-year delay between the entry of the temporary custody order and the entry of the final order did not render the temporary order a permanent order where the chancellor was explicit that the order was to be temporary. McDonald v. McDonald, 876 So.2d 296, 298(¶ 8) (Miss.2004). In McDonald, the Court held that by virtue of the fact that the chancellor cited two events — a home study and the dismissal of a federal lawsuit filed by the father against the chancellor — as triggers that would invite further review of the case, the order clearly was intended to be temporary. Accordingly, the Court had no jurisdiction to hear an appeal of the order. Id.
The situation in the case sub judice, with both parents in a state of extreme transition following the divorce, is closely analogous to both Swartzfager and Thompson, in that the issue that prompted the chancellor to modify custody with a temporary order was an amorphous issue with no concrete date for resolution. This situation is unlike the situation in McDonald, where the order set concrete guidelines for additional review. The guidelines in the McDonald order, while not marked by a date certain, were defined in the order and clearly were ascertainable at some point in the future. With no specific "triggers" for additional review and no action by the chancellor sua sponte to review the status of Quadrini and Spradley's transitions into more permanent situations, the order of the chancellor took on “incidents of permanency” that transformed the temporary order into a permanent one.