## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CP-00361-COA

JEREMY TODD COOPER                                                   APPELLANT

v.

LAQUITTA NECOLLE HIGGINS                                              APPELLEE

DATE OF JUDGMENT:                02/03/2015
TRIAL JUDGE:                     HON. CATHERINE FARRIS-CARTER
COURT FROM WHICH APPEALED:       COAHOMA COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:          JEREMY TODD COOPER (PRO SE)
ATTORNEY FOR APPELLEE:           PATRICIA ANN BOOKER
NATURE OF THE CASE:              CIVIL - CUSTODY
TRIAL COURT DISPOSITION:         PETITION TO MODIFY CUSTODY DENIED
DISPOSITION:                     AFFIRMED - 03/22/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE IRVING, P.J., FAIR AND WILSON, JJ.

### WILSON, J., FOR THE COURT:

¶1.     Jeremy Todd Cooper filed a pro se petition for custody of his minor son, Langston.

Because Cooper failed to present any evidence of a material change in circumstances since

the denial of his prior petition to modify custody, the chancellor denied Cooper's present

petition.  On appeal, Cooper argues that the chancellor erred and was biased.  Finding no

error or hint of bias, we affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.     Cooper filed his pro se petition to modify custody in the Coahoma County Chancery

Court.  The docket in this case dates back to 2007, and prior actions concerning the child

were litigated in Michigan and Florida. However, the record in this appeal consists only of Cooper's most recent two-page petition to modify custody, the transcript of the hearing on the petition, an exhibit introduced into evidence at the hearing, and the court's final judgment denying the petition. From this limited record, we can discern limited facts.

¶3. Langston was twelve years old at the time of the hearing. According to his mother, Laquitta Necolle Higgins, Langson has "post developmental disorder," a disorder on the autism spectrum, but not "full-blown autism." Higgins testified that Langston continues to develop and will one day be able to care for himself.

¶4. In 2004, a Michigan court awarded Higgins sole physical custody of Langston. It appears that Cooper subsequently initiated litigation concerning the child in Florida, which was dismissed for lack of jurisdiction. It further appears that Cooper has failed to pay child support and has failed to return Langston to his mother after having visitation.

¶5. In June 2008, Cooper filed a petition to modify custody in the Coahoma County Chancery Court. A prior chancellor denied the petition in August 2008.

¶6. In September 2013, Cooper filed a second petition to modify custody. The chancellor denied the petition in September 2013, and Cooper appealed. However, the court reporter later resigned, and replacement court reporters were unable to locate the original transcription notes or tapes. Accordingly, the Mississippi Supreme Court remanded the case for the chancellor to determine whether a suitable transcript could be reproduced or, alternatively, to hold a new trial. A suitable transcript could not be reproduced, so a new trial was ordered.

¶7. On remand, Cooper filed a new petition to modify custody. Cooper's pro se petition

accused Higgins of assaulting him in 2005, of interfering with his visitation in 2005 and 2006, and of misrepresenting her place of residence in 2008.

¶8.    Cooper subpoenaed Langston to testify, but after talking to the child in camera, the chancellor determined that he lacked the capacity to participate effectively in the hearing. In addition, the chancellor noted that Langston's testimony was not necessary to determine whether there had been any material change in circumstances. Cooper did not voice any objection to this ruling below, nor does he challenge it on appeal.

¶9.    Before Cooper called his first witness, the chancellor emphasized that it was his burden to prove a material change in circumstances. The chancellor also discussed that a custody hearing is a complicated matter and asked Cooper whether he was certain that he wanted to proceed pro se. Cooper confirmed that he desired to do so.

¶10.    Cooper called Higgins as his first witness. During a brief examination by Cooper, Higgins testified that she had lived at her present residence for approximately five years, that she was raised by both her biological father and her stepfather, and that she collects books. Cooper then announced that he had no further questions.

¶11.    Cooper then took the stand himself. He accused Higgins of acts of violence and of interfering with his visitation in 2005 and 2006, and he attacked her character generally. Cooper also testified that Langston would be better off living with him because he believed that he had a condition similar to Langston when he was a child. Cooper opined that he understood Langston and how his brain worked better than Higgins.

¶12.    After Cooper testified, he rested. Higgins then moved to dismiss the petition on the

3

ground that Cooper failed to prove a material change in circumstances. The court granted the motion and dismissed the petition on that ground.

¶13. Cooper filed a timely notice of appeal. In his brief on appeal, he alleges that the chancellor (1) erred by denying his petition to modify custody; (2) abused her discretion by not holding Higgins in contempt; (3) was biased; and (4) "erred in failing to hear [a motion filed by Cooper] on October 10, 2012."

**DISCUSSION**

¶14. "The standard of review in child custody cases is limited. Reversal occurs only if a chancellor is manifestly wrong or applied an erroneous legal standard. This Court will not reverse a chancery court's factual findings, where there is substantial evidence in the record supporting [them]." *Floyd v. Floyd*, 949 So. 2d 26, 28 (¶5) (Miss. 2007) (citation omitted). "The test for a modification of child custody is: (1) whether there has been a material change in circumstances which adversely affects the welfare of the child and (2) whether the best interest of the child requires a change of custody." *Id.* at 29 (¶10). "[T]he non-custodial parent has the burden of proving that since the decree or order sought to be modified, a material change has occurred in the custodial home which adversely affects the child." *Swartzfager v. Derrick*, 942 So. 2d 255, 257-58 (¶9) (Miss. Ct. App. 2006) (citing *Polk v. Polk*, 589 So. 2d 123, 129 (Miss. 1991)).

¶15. Nothing in the record in this case provides even the slightest indication of a material and adverse change in circumstances since the denial of Cooper's 2008 petition to modify custody. Cooper's testimony consists of only generalized attacks on Higgins's character,

4

disputed accusations regarding incidents that occurred a decade ago, and his own opinion that he is a better parent than Higgins. Accordingly, the chancellor did not err by denying Cooper's petition.

¶16. Cooper's remaining arguments are without merit. He alleges that the chancellor was biased, but there is nothing in the record to support his allegation. Cooper next asserts that the chancellor should have held Higgins in contempt, but Cooper presented no evidence of any conduct warranting a finding of contempt. Finally, Cooper argues that the chancellor erred by failing to hear a motion on October 10, 2012, which was before Cooper's prior appeal and remand. However, from the record on appeal, we cannot discern the substance of the motion or why it was not heard on that day,[1] and there is no explanation as to how Cooper was prejudiced by the fact that it was not heard on that day.

¶17. In summary, we affirm because the record reveals no reversible error and because Cooper failed to meet his burden of proving a material change in circumstances since the court's 2008 order regarding Langston's custody.

¶18. **THE JUDGMENT OF THE COAHOMA COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, JAMES AND GREENLEE, JJ., CONCUR.**

---

[1] *Pennington v. Dillard Supply Inc.*, 858 So. 2d 902, 903 (¶5) (Miss. Ct. App. 2003) ("It is an appellant's duty to justify his arguments of error with a proper record or the trial court will be considered correct. The record on appeal must show such portions of the record of the trial court as are necessary for a consideration of the questions presented." (citations omitted)).