# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01295-COA

**STEVE ALTOM AND SHEREE ALTOM**                    **APPELLANTS**

**v.**

**HARLAND JONES**                                              **APPELLEE**

DATE OF JUDGMENT:              08/28/2014
TRIAL JUDGE:                  HON. JOHN ANDREW HATCHER
COURT FROM WHICH APPEALED:    LEE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANTS:      RICHARD SHANE MCLAUGHLIN
ATTORNEY FOR APPELLEE:        WALTER ALAN DAVIS
NATURE OF THE CASE:           CIVIL - CUSTODY
TRIAL COURT DISPOSITION:      GRANTED CUSTODY OF THE MINOR
                              CHILD TO THE APPELLEE
DISPOSITION:                  AFFIRMED – 04/26/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND ISHEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Steve and Sheree Altom appeal from the judgment of the Chancery Court of Lee County that granted custody of their minor grandchild, Hayden Jones, to his father, Harland Jones (Jones). On appeal, the Altoms argue: (1) the chancellor erred in reinstating the natural-parent presumption, (2) the record establishes that the natural-parent presumption was rebutted due to the evidence presented, and (3) the temporary orders issued by the chancery court acquired sufficient incidents of permanency.

¶2.     Finding no error, we affirm the chancery court's judgment.

## FACTS

¶3. On September 29, 2007, Jones and Jessica Altom were married. One child, Hayden, was born to the marriage. Jones and Jessica divorced on January 6, 2009. As a result, the chancery court awarded physical and legal custody of Hayden to Jessica and granted Jones visitation rights. Jessica was living with her parents, the Altoms, when the divorce was granted. However, Hayden had been living with the Altoms since he was eight or nine days old. In November 2010, Jessica invited Jones to come to the Altoms' home in hopes of resolving a dispute. However, when Jones arrived, an additional dispute arose between Jones and Steve. After that incident, the Altoms and Jessica prevented Jones from exercising visitation with Hayden. As a result, Jones retained counsel and, on April 11, 2011, filed a petition for contempt with the chancery court. On May 17, 2011, the chancery court issued an order that modified Jones's visitation and permitted visitation to take place outside of the Altoms' home.

¶4. On April 21, 2011, despite the fact that Jones was already paying Jessica child support as part of the judgment of divorce, the Mississippi Department of Human Services (DHS) instituted a separate action against Jones. As a result of that proceeding, DHS obtained a separate order of support against Jones, including an arrearage award in the amount of $1,584, which was withheld by the IRS from Jones's tax refund. After receiving notice of the child-support action, Jones made payments to DHS from June 2012 through August 2013. Ultimately, the IRS refunded the $1,584 to Jones.

¶5. On November 25, 2012, Jessica died in an automobile accident. Following Jessica's death, the Altoms were granted temporary custody of Hayden by an order of the Lee County

2

Youth Court. Apparently, neither the chancery court nor Jones was provided any prior notice of the youth court's action. Jones filed a petition for custody of Hayden in which he asked the court to order the Altoms to turn over custody of Hayden to him. After an initial hearing on the matter, held on December 18, 2012, the chancery court granted the Altoms temporary custody of Hayden, with Jones having visitation rights consistent with those granted in the judgment of divorce, and set the matter for a final hearing on February 19, 2013. However, the hearing was not held on February 19 because Jones had failed to provide discovery that had been requested by the Altoms. Rather, the case was continued until June 11, 12, and 13, 2013. In the meantime, since Jones also had failed a court-ordered drug test in December 2012, the court had ordered Jones to continue submitting to reasonable drug testing.

¶6.     The chancery court heard the matter as previously scheduled and, on June 19, 2013, issued an opinion and judgment, in which it found that the Altoms had rebutted the natural-parent presumption possessed by Jones due to his having deserted Hayden for the first two and a half years of Hayden's life. But the court also found that since Jessica's death, Jones "ha[d] made a concerted effort to have a relationship with his son, which involved custody." Nevertheless, the court applied the *Albright*[1] factors and determined that it was in Hayden's best interests for the Altoms to retain custody of him. So the court granted temporary physical custody of Hayden to the Altoms, with visitation to Jones, and joint legal custody of Hayden to Jones and the Altoms. The court also ordered Jones to pay retroactive child support to the Altoms in the amount of $2,556.34, with the payment to be made before

---

[1] *Albright v. Albright,* 437 So. 2d 1003 (Miss. 1983).

December 31, 2013, and, thereafter, monthly payments in the amount of $366.62. Apparently the retroactive child-support payment represented child support for the period of time following Jessica's death to the June 2013 hearing date. Finally, in the opinion and judgment, the chancery court set the matter for review one year later on June 17, 2014, and stated: "The terms of this Order, Judgment and Decree are temporary in nature and not res judicata."

¶7. On June 17, 2014, the chancery court reconvened for the review hearing. It heard testimony from the Altoms and Jones regarding how life had been for them and Hayden during the previous year. On June 20, 2014, the court issued an order, granting Jones additional visitation time with his son and keeping all prior orders in full force and effect, including the order giving the Altoms temporary custody of Hayden, and set an additional hearing for July 30, 2014.

¶8. At the July 30, 2014 hearing, the chancery court issued a bench ruling followed by an August 7, 2014 order in which it granted temporary custody of Hayden to Jones, with visitation rights to the Altoms. Contrary to its earlier finding in one of the temporary orders, the court found that "the natural[-]parent presumption [was] strong[,]. . . extremely strong in this case[,] . . . [and that] the natural[-]parent presumption [was] not only in effect but [had] been reinforced by the rehabilitative efforts that . . . Jones [had] made in his life." Following the ruling, the Altoms filed a motion to amend the August 7, 2014 order with an alternative request that the order be certified as a final judgment under Rule 54(b) of the Mississippi Rules of Civil Procedure. The court denied the motion to amend but granted the

4

alternative request to certify the order as a final judgment. This appeal followed.

## DISCUSSION

¶9. "The standard of review in child custody cases is limited. Reversal occurs only if a chancellor is manifestly wrong or applied an erroneous legal standard." *Floyd v. Floyd,* 949 So. 2d 26, 28 (¶5) (Miss. 2007). In *McDonald v. McDonald,* 39 So. 3d 868, 881 (¶42) (Miss. 2010) (internal citation and quotation marks omitted) (quoting *Johnson v. Gray,* 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003)), the Mississippi Supreme Court stated:

> [An appellate c]ourt grants deference to factual findings in custody decisions, as chancellors have the ultimate discretion to weigh evidence the way they see fit. The credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence are primarily for the chancellor as the trier of facts.

### I. Natural-Parent Presumption Reinstated

¶10. On appeal, the Altoms argue that the chancery court erred in failing to recognize that the natural-parent presumption had previously been rebutted. The Altoms further argue that there was no way that the rebuttal of the natural-parent presumption could have been "undone" by Jones's good behavior. In response, Jones argues that because the chancery court indicated that the June 19, 2013 order was, in fact, a temporary order, the court was not bound by its prior temporary findings. Jones also argues that the chancery court was well within its discretion to reevaluate the question of desertion and reinstate the natural-parent presumption.

¶11. It is well established that in custody proceedings between a natural parent and a third party, such as the Altoms, the law presumes that the child's best interests are served by

allowing him to remain in his natural parent's custody. *Carter v. Taylor,* 611 So. 2d 874, 876 (Miss. 1992). However, the third party may rebut the natural-parent presumption by showing: (1) the parent has abandoned the child; (2) the parent has deserted the child; (3) the parent's conduct is so immoral as to be detrimental to the child; or (4) the parent is unfit, mentally or otherwise, to have custody. *Vaughn v. Davis*, 36 So. 3d 1261, 1264-65 (¶12) (Miss. 2010); Miss. Code Ann. § 93-5-24(1)(e)(i)-(ii) (Rev. 2013). "If the court finds one of these factors has been proven, then the presumption vanishes, and the court must go further to determine custody based on the best interests of the child through an on-the-record analysis of the *Albright* factors." *Pendleton v. Leverock,* 23 So. 3d 424, 431 (¶24) (Miss. 2009) (citing *In re Custody of M.A.G.,* 859 So. 2d 1001, 1004 (¶6) (Miss. 2003)).

¶12.    Here, the chancery court found, in its temporary order dated June 19, 2013, that

> [for] the first two and [one] half (2 ½) years of Hayden Jones'[s] life, there was clear and convincing desertion of said child by [Jones's] avoidance of [his] duties and obligations for the child, leaving same nearly totally in the hands of the [Altoms], though with some small monetary contribution and some small sporadic contact by [Jones], thus rebutting the natural[-]parent presumption by clear and convincing evidence.

At that point, the chancery court conducted an *Albright* analysis and determined that it was in Hayden's best interests for the Altoms to retain temporary custody of Hayden. However, as revealed in the facts portion of this opinion, the chancery court explicitly stated that the order was "temporary in nature and not res judicata," apparently meaning that none of the court's findings were final. Consistent with this view is the fact that the court also set a date for further review one year later. As stated, in the court's bench ruling after the review hearing, the chancellor determined that because Jones had made sufficient strides in

6

rehabilitating himself, he was entitled to the benefit of the natural-parent presumption and that the presumption was strong. The court placed a great amount of weight on the newly presented evidence by Jones, which showed that he had continued to work the same job, that he had moved to a management position at his job, and that he had not tested positive for drug use while under the chancery court's supervision.

¶13. Our review of the record indicates that the chancery court never intended for the "temporary" orders granting custody to the Altoms to serve as final judgments in the matter. The very fact that the court set a follow-up hearing serves as confirmation that nothing was final regarding custody of Hayden. Therefore, we agree with Jones and find that the chancery court was well within its discretion in finding that Jones was entitled to the natural-parent presumption due to the progress that Jones has made in rehabilitating himself as a parent.

## II. Natural-Parent Presumption Rebutted

¶14. The Altoms also argue that even with giving Jones the benefit of the natural-parent presumption, they still rebutted the presumption and are entitled to custody of Hayden. In support of this argument, the Altoms point to the other findings that the chancery court made in discussing the *Albright* factors in the June 19, 2013 opinion and judgment. More specifically, the Altoms point to the chancery court's finding that Jones had abandoned Hayden for the first two and one-half years of his life, to Jones's prior positive drug tests, and to the chancery court's finding that Jones had been involved, on one occasion, in the manufacture and trafficking of marijuana. The Altoms further argue that drug abuse by a

natural parent constitutes immoral conduct, which may be used to rebut the natural-parent presumption. The Altoms assert that, regardless of Jones's improvements over the one-year span, he is bound to the court's prior factual findings. Based on this assertion, the Altoms conclude that the chancellor's application of the *Albright* factors was, in fact, warranted and that the factors still weigh heavily in their favor.

¶15.    In response, Jones, citing *Seller v. Sellers,* 638 So. 2d 481 (Miss. 1994), argues that prior drug use does not hinder a parent from obtaining custody or render the parent unfit where there is evidence of reform. In *Sellers,* a father appealed the award of custody of his child to the child's maternal aunt. The Mississippi Supreme Court held that (1) the presumption in favor of awarding custody to the natural parent should prevail over any imperative regarding separating siblings, and (2) the chancellor erred in awarding custody of the child to her aunt, rather than to the natural father. The *Sellers* court stated:

> The only factor weighing against Raymond was his history of marijuana use. However, this fact was not mentioned by the chancellor in his ruling. Raymond testified that after he was refused custody of his children at the original [y]outh [c]ourt hearing, he completely stopped using marijuana. He further testified that he had not used marijuana in over a year, a fact that was not disputed by any party, and also volunteered to submit to drug testing, day or night, if he were awarded custody of Anna. Based on the evidence presented, Raymond appears to have overcome his problem with marijuana.

*Sellers,* 638 So. 2d at 486-87. In addition, Jones argues that there is substantial evidence supporting the fact that he did not desert Hayden. More specifically, Jones cites to the fact that he visited Hayden on a regular basis and even took legal action on the two separate occasions that he was denied visitation with his son. Jones also argues that, while he and the Altoms disagree on the volume of his visitation, the Altoms admit that there was a substantial

8

amount of visitation by Jones. Jones further argues that there is a substantial amount of evidence showing that he provided financial support for Hayden throughout his life.

¶16. Here, Jones has demonstrated himself to have been drug free for more than a year prior to his being awarded temporary custody of Hayden, and he has stated his willingness to be drug tested "until the end of time." Therefore, we agree with Jones that there is substantial evidence supporting the decision of the chancery court. As stated, we afford substantial deference to the chancery court when reviewing its factual findings and determining if those findings are clearly erroneous. Likewise, "[o]n appeal, we cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *White v. White,* 26 So. 3d 342, 352 (¶31) (Miss. 2010) (internal citation omitted). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion and the evidence must be more than a mere scintilla or suspicion." *Knight v. Pub. Emps. Ret. Sys. of Miss.,* 108 So. 3d 912, 922 (¶37) (Miss. 2012) (internal citation and quotation marks omitted). As such, we find no merit to the Altoms' assertion that the chancery court erred in not finding that they rebutted the natural-parent presumption by clear and convincing evidence.

### III. Incidents of Permanency

¶17. The Altoms' last argument is that the chancellor erred in issuing the August 7, 2014 order, which modified the June 19, 2013 order, because the June 19, 2013 order had acquired sufficient incidents of permanency and operated as a de facto permanent order. The Altoms contend that the passage of a sufficient amount of time can make even temporary orders

9

permanent for custody-modification purposes, thereby requiring that a change of custody be predicated on a showing of a material change in circumstances that adversely affected the child. The Altoms then conclude their argument by stating that Jones failed to prove any material change in circumstances adverse to Hayden's best interest.

¶18. In response, Jones argues that the chancellor's previous orders were meant to be temporary, citing to the facts that the chancellor stated that the orders were not to be final or to affect the outcome of the final hearing and that the chancellor set additional proceedings on specific dates. Jones contends that the mere passage of time is not the only factor in determining whether incidents of permanency have been established and such decisions are best left to the chancellor's sole discretion.

¶19. We do not disagree with the Altoms' basic argument that for custody-modification purposes, a temporary order in certain circumstances, because of the passage of time, can be considered permanent. *See Swartzfager v. Derrick*, 942 So. 2d 255, 258 (¶10) (Miss. Ct. App. 2006); *Thompson v. Thompson,* 799 So. 2d 919, 926-27 (¶¶30-31) (Miss. Ct. App. 2001). However, that is not the case here. We agree with Jones that the chancellor's previous orders were meant to be, and were in fact, temporary orders. Even a casual review of the temporary orders that were entered makes it abundantly clear that the chancellor intended to review the matter of custody at a later date, precluding a finding that the temporary order had become final. That this is the case is borne out by the fact that in each temporary order that was entered prior to the August 7, 2014 order, the chancellor set a date for further review, and as previously noted, the chancellor explicitly stated, although not very

artfully, that none of the temporary orders were res judicata. All parties were aware of the "temporary" nature of the previous orders. That is borne out by the fact that no one attempted to appeal either of the temporary orders, and the Altoms recognized that even the August 7, 2014 order, which underlies this appeal, was temporary because they sought and obtained a Rule 54(b) certification to allow this appeal. So we reject the Altoms' assertion that the June 19, 2013 order had been transformed into a permanent order. This issue lacks merit. Accordingly, we affirm.

¶20. **THE JUDGMENT OF THE CHANCERY COURT OF LEE COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR, JAMES, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**