# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01364-COA

**STEPHEN EDWARD INGRAM**                                   **APPELLANT**

**v.**

**KIMBERLY DAWN DEMPSEY INGRAM**                       **APPELLEE**

DATE OF JUDGMENT:          11/17/2023
TRIAL JUDGE:               HON. GERALD MARION MARTIN
COURT FROM WHICH APPEALED: SMITH COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:    JOHN DAVID SANFORD
ATTORNEY FOR APPELLEE:     COREY DANIEL GIBSON
NATURE OF THE CASE:        CIVIL - CUSTODY
DISPOSITION:               AFFIRMED - 09/09/2025
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., McCARTY AND WEDDLE, JJ.**

**WEDDLE, J., FOR THE COURT:**

¶1.    This is an appeal from a Smith County Chancery Court divorce judgment awarding Stephen and Kimberly Ingram joint legal custody of their two children, with Kimberly having sole physical custody subject to Stephen's visitation rights.[1] On appeal, Stephen asserts that the chancellor erred in awarding custody to Kimberly and, in the alternative, erred in awarding him less visitation than the parties had agreed to and had been exercising pursuant to a temporary order. Upon review, we find no error and affirm the chancellor's judgment.

## FACTS

_____

[1] The chancellor granted Stephen a divorce on the ground of uncondoned adultery, and the parties reached an agreement as to support for the minor children, the support of the parties, and the division of marital property. Stephen does not address these matters on appeal.

¶2.     The parties were married on April 17, 2010. During their marriage, they had two children: a son, born in August 2014, and a daughter, born in December 2015. The parties separated on April 28, 2020. On June 11, 2020, Stephen filed for divorce on the ground of uncondoned adultery or, in the alternative, irreconcilable differences. Stephen additionally asked that the chancellor, inter alia, grant him physical and legal custody of the minor children, subject to Kimberly's reasonable visitation. On July 27, 2020, Kimberly filed a counterclaim for divorce on the ground of habitual cruel and inhuman treatment or, in the alternative, irreconcilable differences. Kimberly also asked that she be granted sole physical and legal custody of the minor children.

¶3.     On September 18, 2020, the chancellor entered a temporary order granting the parties joint legal custody of the children, and awarding Kimberly sole physical custody subject to Stephen's reasonable visitation. On June 29, 2021, the chancellor entered an order appointing a guardian ad litem (GAL). On March 22, 2022, the GAL filed her interim report, and having considered the *Albright* factors [2] she recommended that Kimberly have physical custody of the minor children, that the parties should share joint legal custody, and that Stephen should exercise standard visitation. The GAL made her recommendation with the stipulation that since the case was still pending, she reserved the right to modify her recommendation based upon pending testimony.

¶4.     On April 9, 2023, the GAL filed her supplemental report, which outlined her

---

[2] *See Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983).

investigation into the best interests of the minor children, summarized her meetings and interviews with the parties and other family members, and analyzed the *Albright* factors with the findings of her investigation. The GAL maintained that Kimberly should have physical custody of the minor children, the parties share joint legal custody, and Stephen exercise standard visitation. At the conclusion of the hearing held on April 10, 2023, the chancellor entered a bench ruling granting the parties joint legal custody of the minor children, with Kimberly having sole physical custody of the minor children of the parties subject to Stephen's visitation rights. On November 17, 2023, the chancellor entered a final judgment of divorce incorporating his bench ruling. Aggrieved by the chancellor's custody determination and visitation schedule, Stephen appeals.

## STANDARD OF REVIEW

¶5. "Unless the chancellor abused his discretion, was manifestly in error, or applied an erroneous legal standard, this Court will not reverse a chancery court's decision. This Court cannot re-weigh evidence in a child-custody case and must defer to the chancellor's findings. As long as a chancellor's findings of fact are supported by substantial credible evidence, they will remain undisturbed on appeal." *Tedford v. Tedford*, 312 So. 3d 420, 424 (¶14) (Miss. Ct. App. 2021) (citations omitted).

## DISCUSSION

### I. The Chancellor's *Albright* Analysis

¶6. Stephen argues that the chancellor erred by awarding physical custody of the minor

3

children to Kimberly when the chancellor allegedly failed to consider substantial evidence in the *Albright* analysis. On appeal, a chancellor's findings of fact will be affirmed if they are supported by substantial credible evidence. *Morland v. Morland*, 396 So. 3d 501, 505 (¶6) (Miss. Ct. App. 2024) (citing *Heisinger v. Riley*, 243 So. 3d 248, 256-57 (¶30) (Miss. Ct. App. 2018)). "Matters involving child custody are within the sound discretion of the chancellor." *Id*. We will not reverse the chancellor's custody decision "unless the chancellor abused his discretion, was manifestly wrong, or clearly erroneous, or applied an erroneous legal standard." *Id*.

¶7.     When determining child custody, "the polestar consideration is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005. To meet these goals, the court evaluates the following factors introduced in *Albright*: (1) the age, sex, and health of the child; (2) "the continuity of care prior to the separation"; (3) the parenting skills of each parent; (4) "the willingness and capacity to provide primary child care"; (5) "the employment of the parents and the responsibilities of that employment"; (6) the "physical and mental health and age of the parents"; (7) "emotional ties of the parent and the child"; (8) the moral fitness of each parent; (9) "the home, school, and community record of the child"; (10) the preference of the child; (11) the stability of the home environment; and (12) "other factors relevant to the parent-child relationship." *Tedford*, 312 So. 3d at 425 (¶16) (quoting *Albright*, 437 So. 2d at 1005).

¶8.     Stephen first alleges that the chancellor erred in finding "the parenting skills" factor

4

and "the willingness and capacity to provide childcare" factors favored Kimberly. Considering these two factors jointly, the chancellor pointed out "[Stephen]'s work schedule and both parties agreed that Kimberly was the one who on the majority of days carried the children to school, picked them up from school, got them dressed for school, prepared their lunches, did all of the homework with the children, bathed the children, got the children ready for bed." However, Stephen submits that the chancellor failed to discuss any testimony by Kimberly and her mother that address "Kimberly's apparent struggles with parenting the minor children at the time of the marriage." We have held that "the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Case v. Case*, 339 So. 3d 796, 804 (¶16) (Miss. Ct. App. 2022) (citing *Hall v. Hall*, 134 So. 3d 822, 827 (¶19) (Miss. Ct. App. 2014)). This Court is not permitted to reweigh the evidence to make our own independent determination. *Ivy v. Ivy*, 863 So. 2d 1010, 1013 (¶10) (Miss. Ct. App. 2004). After our review of the record, we find no clear error or abuse of discretion in the chancellor's consideration of these factors.

¶9. Stephen also alleges the chancellor assigned improper weight to the "continuity of care" factor. The chancellor based his decision on the testimony at trial that Kimberly was the primary caretaker for the children and provided them transportation to and from school and extracurricular activities. It is undisputed that Kimberly was the primary caretaker of the minor children during the marriage. The chancellor stated in his bench ruling that Kimberly was "the one who on the majority of the days carried the children to school, picked them up

from school, although when they got out of school [Stephen] would not have been working . . . ." Stephen argues that "[he] should not be punished for working nights and providing financially for the family." Again, "this Court cannot reweigh the evidence and must defer to the chancellor's findings of the facts, so long as they are supported by substantial evidence." *Riley v. Heisinger*, 302 So. 3d 1243, 1255 (¶44) (Miss. Ct. App. 2020) (quoting *Hall*, 134 So. 3d at 828 (¶21)). The chancellor noted in his bench ruling that Kimberly's work schedule is "very similar to the children's school attendance therefore giving her much more capacity for primary care." We find that the chancellor's finding was supported by substantial evidence, and there is no clear error or abuse of discretion in the chancellor's consideration of this factor.

¶10. In Stephen's last assignment of error under the chancellor's *Albright* analysis, he alleges that the GAL and the chancellor should have considered Kimberly's alleged interference with his visitation under the "parenting skills" factor and the "stability of the home environment" factor. While it was not directly addressed in the chancellor's final judgment, our review of the record reveals that the chancellor did thoroughly consider each applicable factor, and his ruling was supported by substantial credible evidence. Stephen again asks this Court to reweigh the evidence and substitute our judgment for that of the chancellor. It is well established that in a custody case, "the chancellor has the ultimate discretion to weigh the evidence the way [he] sees fit." *Polk v. Polk*, 332 So. 3d 348, 355 (¶29) (Miss. Ct. App. 2021). We may not substitute our judgment for the chancellor's.

6

*Stuckey v. Stuckey*, 341 So. 3d 1030, 1038 (¶23) (Miss. Ct. App. 2022) (citing *Brewer v. Brewer*, 919 So. 2d 135, 141 (¶23) (Miss. Ct. App. 2005)). Therefore, we find no clear error or abuse of discretion in the chancellor's *Albright* analysis.

¶11. Our review of the record reflects that the chancellor's custody award was supported by substantial credible evidence. We find no reversible error in the chancellor's determination that Kimberly should be awarded sole physical custody of the minor children subject to Stephen's visitation rights.

## II. Visitation Schedule

¶12. Stephen alleges that the chancellor erred in not awarding him sufficient visitation with the minor children by reducing his weekend visitation from the first, second, and fourth weekends of each month, as ordered in the temporary order, to every other weekend in the final order.[3] Notably, Stephen cites no authority in support of his argument. The temporary order was in effect for more than three years. We have consistently held that temporary custody orders are provisional and do not bind the court in its final determination. "A temporary custody order is just that, temporary; it does not change the underlying burden of proof." *Sanders v. Sanders*, 281 So. 3d 1043, 1054 (¶43) (Miss. Ct. App. 2019). "A determination one way for a temporary order does not require the same result in the permanent order." *Hammons v. Hammons*, 289 So. 3d 1214, 1219 (¶20) (Miss. Ct. App.

---

[3] Stephen was granted visitation in addition to alternating weekends. However, he limits his argument to the reduced weekend visitation.

2020).[4] In *Hammons*, we held that the chancery court did not abuse its discretion when it entered a final judgment different from the temporary order after all evidence had been presented. Although these cases address changes in custody from the temporary order to the final, as opposed to visitation, the same analysis applies. Similar to the case before us, when the chancery court entered the temporary order, the chancellor had not heard all the testimony or considered all the evidence to make a final custody and visitation determination.

¶13. "The chancellor has broad discretion when determining appropriate visitation and the limitations thereon." *Grames v. Grames*, 235 So. 3d 210, 213 (¶16) (Miss. Ct. App. 2017). (quoting *Fountain v. Fountain*, 877 So. 2d 474, 481 (¶26) (Miss. Ct. App. 2003)). "[A]s in all matters relating to a minor child, the primary consideration [with a visitation schedule] is the best interest of the child[,] . . . start[ing] from the presumption that where possible, that best interest is served by maintaining a viable relationship with both parents." *Scott v. Boudreau*, 375 So. 3d 688, 693 (¶16) (Miss. Ct. App. 2023) (quoting *Strange v. Strange*, 43 So. 3d 1169, 1173 (¶14) (Miss. Ct. App. 2010)). "The chancellor is charged with fashioning a visitation schedule that is in the best interests of the children, and the children's visitation decision is afforded great deference by this Court." *Stuckey*, 341 So. 3d at 1041 (¶36).

---

[4] Nonetheless, temporary orders can acquire "incidents of permanency" if they remain uncontested. For example, we have held that a temporary custody order that operated unchallenged for years had acquired incidents of permanency, effectively becoming a permanent order for purposes of assigning the burden of proof in modification proceedings. *Swartzfager v. Derrick*, 942 So. 2d 255, 258 (¶10) (Miss. Ct. App. 2006). However, this principle applies only when the temporary order remains unchallenged and is treated as permanent by the parties and the court. *See id*. That is not the case here.

¶14.    Here, Stephen was awarded visitation every other weekend with an additional day if a holiday falls on a Friday or Monday, December 25 at 4:00 p.m. until December 31 at 4:00 p.m., half of spring break and Thanksgiving break, Father's Day, and alternating weeks in the summer. This Court recognizes that "liberal visitation, at a minimum, means two weekends a month and five weeks during the summer." *Messer v. Messer*, 850 So. 2d 161, 167 (¶22) (Miss. Ct. App. 2003) (citing *Chalk v. Lentz*, 744 So. 2d 789, 792 (¶9) (Miss. Ct. App. 1999)). We are sympathetic to a parent wanting additional court-ordered visitation; however, we find no abuse of discretion in the chancellor's visitation schedule.

## CONCLUSION

¶15.    Upon review, we find no clear or manifest error or abuse of discretion in the chancellor's *Albright* analysis and his visitation award. Therefore, we affirm the chancellor's final judgment.

¶16.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER AND LASSITTER ST. PÉ, JJ., CONCUR.**