# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00908-COA

**PAUL HASLEY**                                                                 **APPELLANT**

**v.**

**KAREN HASLEY**                                                                 **APPELLEE**

DATE OF JUDGMENT:               08/04/2022
TRIAL JUDGE:                    HON. MARK ANTHONY MAPLES
COURT FROM WHICH APPEALED:      JACKSON COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         MICHAEL B. HOLLEMAN
ATTORNEY FOR APPELLEE:          G. CHARLES BORDIS IV
NATURE OF THE CASE:             CIVIL - DOMESTIC RELATIONS
DISPOSITION:                    AFFIRMED IN PART; REVERSED AND
                                REMANDED IN PART - 05/14/2024
MOTION FOR REHEARING FILED:

**BEFORE WILSON, P.J., WESTBROOKS AND SMITH, JJ.**

**SMITH, J., FOR THE COURT:**

¶1.     Paul Hasley appeals from the judgment of the Jackson County Chancery Court finding temporary orders of separate maintenance to Paul's wife Karen Hasley had been converted to a final order of support.  On appeal, Paul argues that the chancellor (1) erroneously converted the temporary orders into a final order without holding a hearing on the merits of the parties' claims and (2) abused his discretion by failing to grant Paul's motion to dismiss the complaint for failure to prosecute.

¶2.     Upon review, we find no abuse of discretion in the chancellor's decision not to grant Paul's motion to dismiss the complaint.  We therefore affirm that part of the chancellor's final judgment.  We further find, however, that the chancellor erred by converting the

temporary orders of spousal support to a final order. Accordingly, we reverse that part of the chancellor's final judgment, and we remand the matter to the chancery court's active docket for further proceedings consistent with this opinion.

**FACTS**

¶3. Paul and Karen married in April 1991, and they separated in November 2015. During their marriage, the parties had two children, both of whom had reached the age of majority by the time the parties separated. On April 20, 2016, Karen filed a complaint for separate maintenance and temporary relief. In the complaint, Karen alleged that Paul had abandoned the marriage and that she was entitled to separate maintenance. On May 18, 2016, the chancellor entered a temporary order directing Paul to pay Karen $700 a week in temporary separate maintenance. The chancellor awarded Karen temporary use and possession of the marital home and ordered her to pay the monthly mortgage, utilities, and any other debts associated with the marital home. In addition, the chancellor assigned each party the responsibility to pay for certain debts and the use and possession of certain automobiles. Finally, the chancellor's order provided that there would be a trial on the matter at "a later date mutually agreed upon between the parties" and that a family master would review the matter on July 1, 2016.

¶4. On July 1, 2016, Paul filed his answer and affirmative defenses to Karen's complaint. Paul denied that he had caused the parties' separation, and he alleged that Karen's actions had contributed to the demise of their marriage. Paul further alleged that Karen had unclean

2

hands and was not entitled to relief. Karen then filed her answer to Paul's affirmative defenses on July 7, 2016. On August 3, 2016, the chancellor entered an amended temporary order. Most notably, the amended temporary order reduced the amount of Paul's temporary support obligation to Karen from $700 to $600 per week.

¶5. On September 1, 2017, the Jackson County Chancery Court Clerk issued the parties a notice of dismissal for lack of prosecution under Mississippi Rule of Civil Procedure 41(d). The notice informed the parties that the "matter ha[d] been on the docket for twelve (12) months or longer without any action being taken . . . ." The notice also stated that "if no action of record [was] taken within thirty (30) days following the mailing of [the n]otice or if application [was] not made, in writing, as to why [the] case should remain a pending case within thirty (30) days following the mailing of [the n]otice," the chancellor would dismiss the matter without prejudice due to the failure to prosecute.

¶6. On September 11, 2017, Karen filed a motion to remand the matter to the chancellor's docket. On September 13, 2017, the chancellor entered an order finding that Karen's motion was well taken and directing the chancery clerk to reassign the matter to the docket. Almost a year later, on September 6, 2018, Karen filed a complaint for contempt against Paul. She asserted that Paul had failed to pay his weekly temporary separate maintenance and was in arrears $2,869.50. Karen also asserted that Paul had failed to timely satisfy the debts the chancellor had assigned to him. On November 21, 2018, Paul moved for leave to file an amended answer to Karen's complaint to include a counterclaim for divorce. The chancellor

3

set a hearing on the parties' motions for May 22, 2019.

¶7. Following the hearing, the chancellor entered a judgment of contempt against Paul on June 14, 2019. The chancellor found that Paul was in arrears on his temporary separate-maintenance payments to Karen by $13,659.50. The chancellor further found that Paul had possessed the ability to comply with the amended temporary order but had willfully failed to do so. The chancellor sentenced Paul to incarceration in the Jackson County Adult Detention Center for sixty days but stayed the sentence until August 22, 2019, when the chancellor planned to review the matter to determine whether Paul had complied with the prior court orders. The chancellor awarded Karen a monetary judgment of $13,589.50 plus interest against Paul and $2,500 in attorney's fees. The chancellor ordered Paul to pay Karen not only $600 each week in temporary separate maintenance but also $100 each week toward the arrearage. In preparation for the August 22, 2019 review hearing, the chancellor directed Paul to prepare a plan as to how he would repay the arrearage and to present the plan at the review hearing. The chancellor stated that Paul could request a continuance from the review hearing if he complied with all the terms of the contempt judgment. Finally, with regard to Paul's own pending motion before the court, the chancellor granted Paul leave to amend his answer to Karen's complaint to include a counterclaim for divorce.

¶8. On August 22, 2019, the chancellor entered an order to grant Paul's motion to continue the review hearing. The chancellor continued the review hearing to January 9, 2020, and then again until January 23, 2020. As part of the review hearing, Paul submitted

4

to the chancellor his plan to pay the arrearage owed to Karen. Paul also provided the final decree from his bankruptcy case. The final decree, which had been entered on September 26, 2019, showed that Paul's Chapter 7 bankruptcy case had been closed and that his debts had been discharged. Following the January 23, 2020 review hearing, the chancellor entered an order resetting the matter for June 10, 2020. The chancellor granted Paul permission to sell his boat and apply the proceeds of the sale to his arrearage.

¶9. On June 8, 2020, the chancellor reset the hearing on the parties' matter to July 16, 2020. Following the July 16, 2020 hearing, the chancellor entered a temporary order awarding Karen the boat, motor, and trailer and directed Paul to execute documents to transfer his interest in those items to Karen. In exchange for Paul's transfer of his interest in the enumerated items, Karen agreed to credit him $1,500 toward the total arrearage awarded to her by the June 14, 2019 contempt judgment. The chancellor set a review hearing on the matter for October 16, 2020. The chancellor subsequently entered multiple orders to reset the hearing for November 16, 2020; December 15, 2020; and then June 7, 2021.

¶10. On January 7, 2022, the chancery court clerk entered a second Rule 41(d) notice to dismiss the matter for lack of prosecution. Once again, the clerk notified the parties that at least twelve months had passed without any action being taken in the matter. The clerk informed the parties that they had thirty days from the mailing of the notice to either take an action of record or to apply in writing to keep the case pending before the chancellor. The clerk further informed the parties that failure to take either action would result in the entry

5

of an order dismissing the matter without prejudice for failure to prosecute.

¶11. On February 7, 2022, Karen filed a motion to remand the matter to the chancellor's docket. In the motion, Karen stated that the matter between the parties was ongoing, the chancellor had entered a temporary order, and the matter would "have to be set for final disposition." The following month, on March 24, 2022, Paul moved to dismiss the matter due to Karen's failure to prosecute.

¶12. On August 4, 2022, the chancellor entered a final judgment on the parties' motions. The chancellor noted that six years had passed since the entry of the August 3, 2016 amended temporary order that awarded Karen temporary separate maintenance. The chancellor attributed much of the six-year delay in bringing the matter to a full trial to Paul filing bankruptcy and the proceedings that followed, as well as Paul's failure to comply with the amended temporary order. The chancellor concluded that the temporary maintenance awarded to Karen had "acquired incidents of permanency which preclude[d] dismissal of the case." The chancellor further concluded that the prior temporary orders had become final. Aggrieved, Paul appeals.

## STANDARD OF REVIEW

¶13. In domestic relations cases, our review is limited. *Schaubhut v. Schaubhut*, 373 So. 3d 802, 806 (¶10) (Miss. Ct. App. 2023). "Although 'we review questions of law de novo,' we leave a chancellor's factual findings undisturbed 'when supported by substantial evidence unless the chancellor abused [his] discretion, was manifestly wrong or clearly erroneous, or

applied an erroneous legal standard.'" *Id.* (quoting *Johnson v. Johnson*, 357 So. 3d 1168, 1173 (¶12) (Miss. Ct. App. 2023)).

## DISCUSSION

### I.     Denial of Paul's Motion to Dismiss

¶14.    Paul asserts that after Karen filed her answer to his affirmative defenses, she failed to take any action of record over the next six years to advance the litigation toward a final judgment. Paul acknowledges that Karen responded to the chancery clerk's two separate notices of dismissal in 2017 and 2022, but he contends that these responses failed to constitute actions on the record or to comply with the requirements of Rule 41(d). As a result, Paul argues that the chancellor erred by failing to dismiss Karen's complaint.

¶15.    We review a "court's ruling on a dismissal for want of prosecution" for "abuse of discretion." *Scott v. UnitedHealthcare of Miss. Inc.*, 374 So. 3d 1270, 1275-76 (¶18) (Miss. Ct. App. 2023) (quoting *Glass v. City of Gulfport*, 271 So. 3d 602, 604 (¶5) (Miss. Ct. App. 2018)). As we explained in *Scott*,

> Rule 41(d) authorizes the court to dismiss an action involuntarily for dismissal for want of prosecution as a penalty for dilatoriness. Rule 41(d)(1) provides:
>
>> In all civil actions wherein there has been no action of record during the preceding twelve months, the clerk of the court shall mail notice to the attorneys of record that such case will be dismissed by the court for want of prosecution unless within thirty days following said mailing, action of record is taken or an application in writing is made to the court and good cause shown why it should be continued as a pending case. If action of record is not taken or good cause is not shown, the court shall dismiss each such case without prejudice.

7

*Id.* at 1276 (¶20) (citations and internal quotation marks omitted). An "action of record" includes such filings as "[p]leadings, discovery requests, and deposition notices" as well as any act "that advances the case to judgment." *Id.* at (¶21).

¶16. In *Scott*, this Court affirmed the circuit court's dismissal of a case under Rule 41(d)(1) for failure to prosecute. *Id.* at (¶22). As in the present case, the circuit court clerk in *Scott* issued the plaintiff two separate Rule 41 notices. *Id.* at 1273 (¶¶2-3). After receiving the second Rule 41 notice, Scott filed a motion in which he requested that the circuit court leave the case on its docket. *Id.* at 1274 (¶8). Scott neither attached an affidavit or other supporting documentation to his motion nor set his motion for a hearing. *Id.* In response, United Healthcare of Mississippi Inc. "assert[ed] that 'in the almost five years since this case was filed, virtually no action has been taken by Scott to prosecute the case except in response to notices that the case would be dismissed for want of prosecution.'" *Id.* at (¶9). After concluding that Scott's motion failed to constitute an action of record and that Scott failed to show good cause as to why the matter should not be dismissed, the circuit court dismissed the case without prejudice under Rule 41(d). *Id.* at (¶¶10-11). On appeal, this Court found no abuse of discretion. *Id.* at 1276 (¶22). We concluded that Scott had never taken any "action of record" or acted "to 'advance the case to judgment' in any meaningful way." *Id.* at 1277-78 (¶29). Rather than taking action on any pending motion, we determined that Scott's actions before the circuit court had been purely reactionary. *Id.* at 1278 (¶32).

¶17. Here, as the "party seeking to avoid dismissal for lack of prosecution[,]" Karen bore

8

the burden to move the litigation forward in a meaningful way. *Id.* at 1276 (¶21). Despite some similarities with the facts in *Scott*, though, we find the case now before us presents a few important differences. First, the record here reflects that the chancellor entered several temporary orders pertaining to separate maintenance that provided for regular payments by Paul to Karen. Second, in reliance on these various temporary orders, Paul attempted to satisfy his ongoing support obligation to Karen throughout the period between the initial temporary order and the chancery court clerk's second Rule 41 notice. Third, when Paul fell behind in his support payments, Karen took action and filed a complaint for contempt and then pursued her claim against Paul. And finally, based on Karen's request that the chancellor find Paul in contempt, both the chancellor and the parties took subsequent action that resulted in hearings, multiple continuances, a judgment of contempt, and another temporary order. Thus, based upon our review of the record and relevant caselaw, we find no clear error or abuse of discretion in the chancellor's decision not to dismiss Karen's complaint under Rule 41. We therefore affirm that portion of the chancellor's final judgment.

## II.    Conversion of Temporary Orders to a Final Order

¶18.    Paul contends that the chancellor also erred by converting the temporary support orders to a final order without holding an evidentiary hearing on the merits of the parties' arguments. Paul further contends that the chancellor applied the wrong legal standard in reaching his determination. As stated, we review issues of law de novo. *Schaubhut*, 373 So.

3d at 806 (¶10).  For the reasons discussed below, we agree with Paul's claims of error as to this issue.

¶19.    Karen initiated the present matter when she filed her complaint against Paul.  In the complaint, Karen alleged that Paul had abandoned their marriage, and she requested both separate maintenance and temporary relief.  "[A]s the party requesting separate maintenance," Karen bore "the burden of proof of [her] claim."  *Baughman v. Baughman*, 350 So. 3d 271, 280 (¶24) (Miss. Ct. App. 2022).  Our caselaw recognizes that "separate maintenance is [a] court-created equitable relief based upon the marriage relationship and is a judicial command to the husband to resume cohabitation with his wife, or in default thereof, to provide suitable maintenance of her until such time as they may be reconciled to each other."  *Id.* at 279 (¶22) (quoting *Forthner v. Forthner*, 52 So. 3d 1212, 1219 (¶13) (Miss. Ct. App. 2010)).  When a party requests separate maintenance, "a question of fact to be resolved by the chancellor" is whether the requesting party "has engaged in significant conduct that negatively impacted the enjoyment of the marriage contract . . . ."  *Id.* (quoting *Forthner*, 52 So. 3d at 1219 (¶15)).  Thus, before granting a party's separate-maintenance claim, a chancellor must find "(1) a separation without fault on the part of the petitioner spouse, and (2) the offending spouse's willful abandonment of [the] petitioner spouse with refusal to provide support to him or her."  *Id.* at 280 (¶23) (footnote omitted) (quoting *Jackson v. Jackson*, 114 So. 3d 768, 775 (¶17) (Miss. Ct. App. 2013)).

¶20.    A defense "to separate maintenance is 'misconduct on [the] petitioning spouse's part

[that] materially contributes to the separation, so that it may be said that the fault of the petitioner is equal to or greater than that of the offending spouse." *Id.* (quoting *King v. King*, 246 Miss. 798, 803-04, 152 So. 2d 889, 891 (1963)). Although "the petitioner need not be completely blameless," he or she "cannot materially contribute to the separation in amounts equal to or greater than that of the spouse" being sued for separate maintenance. *Id.* Here, Paul admitted in his answer to the complaint that he no longer resided in the marital home. He denied, however, that his actions had caused the parties' separation. Instead, Paul asserted that Karen had contributed to the demise of the parties' marriage, had unclean hands, and was not entitled to any relief.

¶21. As Paul asserts on appeal, and as the record reflects, the chancellor never held an evidentiary hearing on the parties' arguments regarding separate maintenance. Accordingly, the chancellor never made any of the required factual findings to determine if Karen had sufficiently proved the requirements for a permanent award of separate maintenance. Instead, the chancellor relied on the reasoning provided in a line of child custody cases to conclude that Paul's temporary maintenance obligation had "acquired incidents of permanency," which precluded the complaint's dismissal and required the prior temporary orders to be converted to a final order of support, citing *Quadrini v. Quadrini*, 964 So. 2d 576 (Miss. Ct. App. 2007); *Swartzfager v. Derrick*, 942 So. 2d 255 (Miss. Ct. App. 2006); and *Thompson v. Thompson*, 799 So. 2d 919 (Miss. Ct. App. 2001).

¶22. Recently, in *Hendrix v. Whitt*, 373 So. 3d 778, 789-92 (¶¶36-46) (Miss. Ct. App.

11

2023), this Court discussed the three child-custody cases that the chancellor below relied on to convert the parties' temporary support orders to a final order. In specifically addressing *Quadrini*, *Swartzfager*, and *Thompson*, we recognized in *Hendrix* that under certain circumstances a temporary child-custody order can "acquire[] incidents of permanency" or "assume[] the nature of a permanent order" over the passage of time. *Id.* at 789 (¶¶36-37) (citations omitted).

¶23. As Paul argues in his appellate brief, however, our rulings in each of these cases involved an analysis of child custody determinations that we never extended to include such issues as spousal support. *See id.* at (¶42) (noting that "*Quadrini* and its precedent, *Thompson* and *Swartzfager*, involved temporary orders that were entered after an initial court order" on child custody (emphasis omitted)). In holding that the chancellor in *Hendrix* had applied the wrong legal standard to a child custody determination, we recognized that the chancellor had issued a temporary order "but heard no testimony" on the relevant issue "and made no assessment" under the applicable factors "as did the court in *Quadrini*" before reaching a determination about the custody matter. *Id.* at (¶43). Moreover, we concluded in *Hendrix* that "there is nothing in the record reflecting that [the parties] intended their agreed temporary order would become permanent." *Id.*

¶24. Similarly to *Hendrix*, the chancellor here entered the initial and amended temporary orders of spousal support without ever holding an evidentiary hearing to assess the merits of the parties' claims, apply the appropriate factors for separate maintenance, and provide

12

factual findings to support his determination. Also like *Hendrix*, the record here reflects no indication that the parties intended for their temporary support orders to become permanent without a full hearing on the merits. Thus, we decline to extend the reasoning previously applied to temporary child-custody orders to convert the temporary support orders in this matter to a permanent order. Because we find that the chancellor applied the wrong legal standard in awarding Karen permanent separate maintenance, we reverse that part of the chancellor's judgment. We remand the matter to the chancery court's active docket to allow the matter to proceed to an evidentiary hearing and to afford the chancellor the opportunity to properly assess the parties' claims.

## CONCLUSION

¶25. Despite Paul's arguments to the contrary, we find no abuse of discretion in the chancellor's decision not to grant the motion to dismiss the complaint for lack of prosecution. Thus, we affirm that part of the chancellor's judgment. We further find, however, that the chancellor erroneously converted the temporary orders of spousal support to a final order. We therefore reverse that part of the chancellor's judgment and remand the matter for further proceedings consistent with this opinion.

¶26. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR.**

13